People of the State of Illinois, Plaintiff-Appellee, v. Erwin J. Martin, Defendant-Appellant.

Gen. No. 49,912.

First District, Third Division.

February 17, 1966.

Gerald W. Getty, Public Defender of Cook County, of Chicago (James J. Doherty and Frederick F. Cohn, Assistant Public Defenders, of counsel), for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Joel M. Flaum, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE DEMPSEY delivered the opinion of the court.

Erwin Martin was found guilty of theft in a nonjury trial and after a hearing in mitigation and aggravation was sentenced to the penitentiary for a period of 4 to 8 years. The sole contention on appeal is that the trial court committed reversible error in not conducting a hearing to determine if the defendant was mentally competent at the time of trial.

The defendant was observed by police officers at 4:30 a. m. driving an automobile the wrong way on a one-way street. The auto was curbed and the defendant questioned. He stated that the car was hit but that his identification papers and driver's license were at home. He and the car were searched. A screwdriver was found in his belt and a dummy ignition switch was found in the car in place of the original switch. Papers in the car's

glove compartment indicated that the auto was owned by Fred Ellis. The defendant was taken into custody and Ellis was notified. Ellis, who had parked the car in front of his house the night before, arrived at the police station at 5:30 a. m., identified the auto and established his ownership. The defendant maintained in front of Ellis that the car belonged to him, that he bought it a few days before and that he had papers to prove this.

At the trial the defendant testified that he left his home about 4:00 or 5:00 o'clock in the morning to get some cigarettes for some people he was entertaining and that on his way back home he met his friend, George Davis, who was just getting out of an automobile. He said there were other people in the auto and that Davis, who operated a taxi service, offered him $2.00 to drive them to their destination. He yielded to Davis' persuasion, drove the people where they wanted to go and was arrested as he was returning. He denied telling the police that the car was his. He said that he made no statement other than to deny stealing the car.

During his testimony the defendant stated he had suffered from epilepsy for four or five years. He testified that he blacked out two times following his arrest and was taken to a hospital. The disclosure that the defendant was an epileptic is the sole basis for the contention that the trial court, under section 104–2(b) of the Criminal Code, should have stopped the trial and held a hearing as to his competency. Nothing took place at the trial in testimony or conduct, other than the revelation that the defendant was an epileptic, which could have given the court reason to believe the defendant was incompetent. He ably assisted in his defense and he obviously understood the nature of the charge against him and the purpose of the trial. His testimony was clear and coherent, his answers were prompt and responsive, he was firm in denying his guilt and his explanation for having possession of the stolen car was artful. But it is contended

14

that, although no question was raised at the trial concerning his mental condition, the fact that he was an epileptic and had convulsions demonstrated that he suffered from "a serious mental disorder."

Section 104–1, chapter 38, Ill Rev Stats (1963) defines an "incompetent" as a person charged with an offense who is unable because of a physical or mental condition to understand the nature and purpose of the proceedings against him or who is unable to assist in his defense. Section 104–2(b) is as follows:

> "If during the trial the court has reason to believe that the defendant is incompetent the court shall suspend the proceedings and shall conduct a hearing to determine the defendant's competency and shall at the election of the defendant impanel a jury to determine the issue."

██ ██ Evidence of epilepsy is not evidence of incompetency. The mere fact that the defendant stated that he was an epileptic was no reason for the court to question his mental capacity or to conduct a hearing to determine his competency. The cases of Ellis v. U. S., 274 F2d 52 (1959) and Gann v. Gough, 79 F Supp 912 (1948) are analogous to the present one and are in accord with our thinking. In the former, it was held that mere awareness on the part of the district court that a defendant had a history of epilepsy was not, as a matter of law, a prohibition against the acceptance of the defendant's plea of guilty. In the latter, a prisoner had an epileptic seizure the morning he pleaded guilty. It was contended that this prevented him from making a competent and intelligent plea. It was held that the fact that the defendant was an epileptic did not necessarily keep him from being competent while not suffering a seizure, and that the seizure the morning he was sentenced did not incapacitate him from understanding what he was doing at the time he entered his plea.

15

Epilepsy is a symptom of a neurological disorder characterized by seizures, convulsions or temporary loss of consciousness. Except for these seizures and brief periods of unconsciousness, and for short periods afterward, most epileptics are as responsible for their actions as anyone else. In 80 percent or more cases impairment of cerebral functions is but transitory. There are no psychological features or mental disorders that are peculiar to epileptics. Duggins, Epilepsy, Its Causes, Effects and Treatment; Masland, Neurology, Encyclopedia of Mental Health, 1327 (1963); Goldensohn, Epilepsy and Other Paroxysmal Disorders, Encyclopedia of Mental Health, 575 (1963).

For years it was commonly thought that all epileptics were afflicted mentally. Expressions appeared in opinions describing epilepsy as: "A disease attended by brain deterioration which is progressive," "tending to weaken mental force," "of a peculiarly serious and revolting character," "incurable" and "likely to be transmitted by marriage." Busch v. Gruber, 98 NJ Eq 1, 131 A 101; Gould v. Gould, 78 Conn 242, 61 A 604. Although it has now been established medically that epilepsy is not associated with feeblemindedness, mental retardation or insanity, that it is controllable in the great majority of cases, is not contagious or hereditary and that only a disposition to the disorder may be inherited as a recessive trait (as is true of many other diseases), society's knowledge and attitude have not kept pace with medical progress. Putnam, Epilepsy, What It Is, What To Do About It (1958); Wehringer, Epilepsy—Justice Is Needed, 38 NDL Rev 563 (1962); Nardini, You, Your Child and Epilepsy; Irving, Forward II, Eilers and Malone, The Underwriting and Rating for Life and Health Insurance Coverage of Persons Afflicted with Epilepsy (1965). There are still vestiges of the once prevalent misconceptions. For example, in 1965 epileptics were subject to sterilization in 14 states— only two less states than in 1956. In 1965 three states

had antimarriage laws applying to epileptics; however, there were six such states in 1962 and 17 in 1956. The Legal Rights of Persons With Epilepsy (1965) ; Wehringer, Epilepsy—Justice Is Needed, 38 NDL Rev 563 (1962) ; Barrow and Faning, Epilepsy and the Law (1956).

▪▪▪ In Illinois there is no restriction on the marriage of epileptics and they are not subject to sterilization. The only statute affecting them is chapter 95½, paragraph 6–103(8), which provides that before a driver's license can be obtained an acceptable statement from a medical specialist to the effect that the operation of a motor vehicle would not be inimical to the public safety, must be furnished to the Secretary of State. The courts of Illinois have always held that proof of epilepsy does not justify a presumption of permanent mental incapacity. Wilson v. King, 83 Ill 232 (1876) ; Brown v. Riggin, 94 Ill 560 (1880) ; Lyon v. Lyon, 230 Ill 366, 82 NE 850 (1907) ; Lauth v. Harrison-Switzer Milling Co., 140 Ill App 199 (1908) ; Martin v. Fraternal Reserve Life Ass'n, 200 Ill App 359 (1916) ; Eschmann v. Cawi, 357 Ill 379, 192 NE 226 (1934).

The testimony of the defendant that he was an epileptic did not, of itself, make it necessary for the court to suspend the trial and conduct a competency hearing. The judgment of the Criminal Division of the Circuit Court is affirmed.

Affirmed.

SULLIVAN, P. J. and SCHWARTZ, J., concur.