(No. 38984.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JOHNNY SIMS, Plaintiff in Error.

*Opinion filed March 24, 1966.*

WILLIAM E. DOYLE and RUSSELL S. BARONE, both of Chicago, appointed by the court, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH, Assistant Attorney General, and ELMER C. KISSANE and JOEL M. FLAUM, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE SOLFISBURG delivered the opinion of the court:

The defendant, Johnny Sims, was indicted on the charge of arson. He entered a plea of not guilty in the circuit court of Cook County, waived a jury, was found guilty and sentenced to the penitentiary for not less than two nor more than ten years. He brings this writ of error to reverse that conviction.

Defendant first contends that a *bona fide* doubt had arisen with respect to his mental capacity to stand trial and denial of a hearing with respect to mental capacity deprived him of due process of law. In support of the argument defendant stresses that lack of capacity was shown by the fact that he stood mute through his initial court appearances and later refused the services of a private attorney hired by his sister and chose the Public Defender to represent him. This conduct is said to give rise to a *bona fide* doubt as to his capacity to stand trial.

As the result of the muteness and uncooperative attitude

displayed by the defendant, his counsel requested a mental examination of defendant and on May 27, 1963, the court ordered a Behavior Clinic examination. The clinic's report dated July 1, 1963, showed that the defendant, while saying little, knew he was charged with arson, knew his next court date, and knew he was being defended by the Public Defender. The conclusion of the report indicated that it was the examining physician's opinion that the defendant knew the nature of the charges against him and that he was able to cooperate with counsel if he so desired.

Two weeks later on July 11, 1963, the Public Defender reported a breakdown in defendant's willingness to communicate with him and a second Behavior Clinic report was ordered and made. That report dated August 28, 1963, again indicated that the defendant knew the nature of the charges against him, that he was able to cooperate with counsel and further that he was malingering. Trial began on December 2, 1963. Both of these reports were read in open court with copies furnished to all counsel. At no time did defendant's counsel question their sufficiency or applicability to the defendant.

In this court defendant argues that there is grave doubt that these reports involved him. Rather, it is argued that they may apply to another Johnny Sims who was in the county jail at the same time, and who on one occasion was brought into court when the defendant's case was called. The defendant also argues that the first Behavior Clinic report referred to defendant as a 25-year-old well developed male white, while in fact defendant was age 33 and of very short stature. These attacks on the applicability of the reports are minor in nature. The alleged discrepancy as to age was apparently caused by defendant's misstatements to the examining doctor. The "well developed" description would be applicable to anyone who met this criterion regardless of height. The other Johnny Sims who is strongly presented by defendant as a source of confusion was brought into

court on only one occasion, July 9, 1963, and this mistake was immediately picked up by court and counsel. At that time, the assistant State's Attorney said that the man brought to court was not the proper defendant and the judge remembered that he had previously sentenced the man who was present. The judge then caused the record to reflect that the defendant herein is at least six inches shorter than the other Johnny Sims and that there is a marked dissimilarity between them. The reports show that the examinee knew he was charged with arson, knew his next court date, and knew that he was being represented by the Public Defender. It is our conclusion that defendant's contention that these reports were made on another man is not supported by this record. At no time during the trial was it suggested that the reports were not based on an examination of this defendant. These reports were applicable and there appears to be no doubt they were written about the correct Johnny Sims.

We have often stated that if before or during trial, facts are brought to the attention of the court which raise a *bona fide* doubt as to defendant's capacity to stand trial, the judge must order a sanity hearing. (*People* v. *Lego,* 32 Ill.2d 76; *People* v. *Baker,* 26 Ill.2d 484; *People* v. *Burson,* 11 Ill.2d 360.) The test of mental competence is the ability of the accused to understand the nature of the proceedings against him and to adequately aid in the preparation of his defense. (*People* v. *Olmstead,* 32 Ill.2d 306.) The second Behavior Clinic report states that defendant was malingering. This conclusion is further borne out by a reading of his testimony at trial where he testified in a clear, lucid manner and had no difficulty in answering questions by respective counsel. His testimony also showed him to be well oriented and well aware of the nature of the proceedings against him. Actually there was no denial of a hearing with respect to mental capacity as no request for such a hearing was made. Considering the results of the two

Behavior Clinic reports and after examining the record, we conclude that the trial judge did not abuse his discretion. A trial judge is required to impanel a jury to determine the accused's mental capacity only "whenever facts that give rise to a *bona fide* doubt as to the defendant's sanity are brought to the attention of the trial court, either from observation of the defendant or from suggestion by counsel." (*People* v. *Lego,* 32 Ill.2d 76, 78.) This record clearly shows that no *bona fide* doubt was raised as to defendant's sanity and no sanity hearing was required.

Defendant next argues that a signed confession was admitted into evidence over his objection without requiring the State to produce sufficient evidence of its validity. The defendant confessed in writing shortly after his arrest. His statement was taken in the presence of his common-law wife and her mother. Two police officers were also present. No motion to suppress the confession was made. At the trial the State produced two of the witnesses to the confession, namely, one of the police officers and the wife's mother. Defendant argues that their testimony produced rather serious inconsistencies and further that when there are substantial inconsistencies in the statements of the witnesses, it should be incumbent upon the State to produce all witnesses to the confession.

In support of his contention defendant notes that the police officer who testified stated that he read defendant's statement to him because of defendant's difficulty with reading and when he was about half-way through the confession the defendant took it from his hands, stating it was true, and then signed it. The wife's mother, on the other hand, testified that the defendant read and signed the confession in her presence. This inconsistency, if it be such, was of little consequence. The defendant further contends that his signature on the confession appears as a scrawl and not a name. It is clear that the wife's mother indicated that she was quite familiar with the handwriting of the defendant

and that this was the way he signed his name on other occasions. The officer also stated that he saw defendant sign the confession. On the face of this testimony we feel that there was no substantial inconsistency as to the relevant facts surrounding the execution of the confession. The defendant denied making any confession at all, and raises no question as to the voluntary nature or character of the confession. While defendant's counsel made a general objection, there is not the slightest trace of evidence showing that this confession was secured by other than voluntary means. In this posture, absent any assertion that the confession was involuntary, the State was not obligated to produce all witnesses to the confession. *People* v. *Golson,* 32 Ill.2d 398; *People* v. *Joe,* 31 Ill.2d 220.

The judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*