THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* SCOTT BROWN *et al.*, Defendants-Appellants.

(Nos. 52544, 54179 cons.;

First District—April 22, 1971.

Gerald W. Getty, Public Defender, of Chicago, (Suzanna M. Kohut, Assistant Public Defender, of counsel,) for appellants.

Edward V. Hanrahan, State's Attorney, of Chicago, (James Veldman, Assistant State's Attorney, of counsel,) for the People.

Mr. JUSTICE DEMPSEY delivered the opinion of the court:

Scott Brown and Roscoe Hannah were found guilty by a jury of armed robbery and sentenced to serve twenty to forty years in the penitentiary.

The defendants entered the Royal Hand Laundry, operated by Benjamin Brodkin and his wife, on a late afternoon in February 1966. They jumped over the front counter and while Hannah pointed a gun at the Brodkins, Brown emptied the cash register of $100.00 in bills, loose and wrapped change, and a check made out to the laundry. Mrs. Brodkin was pushed into the rear room; as soon as the men left she ran out the back door and started screaming.

Two police officers heard her shout that she had been robbed and saw the defendants running away from the laundry. The officers chased them and fired four warning shots in the air. Hannah was caught after he failed to scale a fence and fell to the ground. Brown was found behind a garbage can. Hannah had an automatic pistol in his hand and a glove in his pocket which matched one found by the Brodkins in the back room of the laundry. A search of Brown uncovered $101.07 in bills and change and a $4.47 check drawn to the Royal Hand Laundry. Much of the change was rolled in wrappers.

At the trial the defendants asserted they were Black Israelites and that their real names were Benjamin and Judah Israel. They denied the robbery. They said that they were walking down the street, heard shots and ran. They claimed bullets struck them but did not wound them. Hannah denied having a gun and denied wearing gloves. Brown denied possessing a check and asserted the money he was carrying was his own. He explained the rolled change by saying, "All Hebrews have money like that—because paper dollars are devaluated."

Remarks made by the defendants during pretrial court appearances—such as Hannah's profession that "the Lord of Hosts" was his attorney—prompted the court to order Behavior Clinic examinations for both of them. The examinations resulted in findings that they understood the nature and purpose of the charges against them and were able to co-

operate with counsel. Because of their subsequent demeanor in court, the State requested competency hearings. The court granted the State's motion and, a few days before trial, a separate hearing was had for each defendant. The State presented the testimony of the director of the Behavior Clinic; no evidence was offered by either defendant and the court directed verdict which the jury returned, finding them competent to stand trial.

The competency hearings are the basis for the defendants' first contention on appeal. They claim that they were denied effective assistance of counsel because their attorney did not conduct *voir dire* examinations of prospective jurors, cross-examine the director of the Behavior Clinic or argue to the jury. Other contentions are that the trial court erred in not ordering another competency hearing during the trial and that the prosecutor's final argument was prejudicial. An additional point raised in a supplemental brief is that the punishment was excessive.

■■ The trial court impartially and exhaustively questioned those persons who were called as jurors in the competency hearings. Neither the State nor the defense had reason to ask further questions and neither did. However, the defendants' attorney promptly challenged the one juror whose response to the court's interrogation revealed that members of his family had been victims of crime. Furthermore, there is nothing in the record to suggest that the attorney had, or could have had, evidence to present contradicting the professional opinion of the State's witness. Useless acts are not required in sanity proceedings (*People v. Cox* (1961), 22 Ill.2d 534, 177 N.E.2d 211), and the attorney's failure to offer testimony, to cross-examine the State's witness and to argue to the jury do not justify inferences of incompetency. To the contrary, the complete record shows that he skillfully represented the defendants and zealously protected their rights.

■■ If upon suggestion of counsel or from the court's own observation a *bona fide* doubt is raised as to a defendant's capacity to stand trial, the trial court has a duty to hold a competency hearing. (*People v. Thomas* (1969), 43 Ill.2d 328, 253 N.E.2d 431; *People v. Sims* (1966), 34 Ill.2d 206, 215 N.E.2d 201.) However, counsel made no such suggestion and a reading of the transcript of the court proceedings shows that no *bona fide* doubt was raised as to the defendants' sanity; a second competency hearing, therefore, was not required. The instant case is not one where a sanity hearing was denied to the defendants. Eleven days before the trial of the robbery issue, a finding of competency was made by a jury as to each defendant. Their behavior after the competency hearings in no way differed from their behavior before the hearings. Indeed, their courtroom behavior evidenced their lucidity. Brown

asked intelligent questions during his competency hearing and Hannah addressed the jury on such difficult subjects as indictments and constitutional rights. They both testified clearly and at length. Their testimony showed them to be well-oriented and well aware of the nature of the proceedings against them.

■■ The defendants were found capable of cooperating with counsel and understanding the nature of the charges against them, and these are the only two tests necessary to be adjudicated competent to stand trial. (*People v. Richeson* (1962), 24 Ill.2d 182, 181 N.E.2d 170; *People v. Stoudt* (1968), 90 Ill.App.2d 140, 232 N.E.2d 800.) Any beliefs the defendants may have had on religious and racial subjects were immaterial as long as they met these tests. The court observed the defendants before and during the trial and there was no reason for the trial to be suspended and another jury impaneled to determine once more their competency.

During his final argument the prosecutor in commenting on the evidence said:

"There is one thing I don't want you to lose sight of. The charge against these two men is armed robbery * * *. This is no toy pistol * * *. This is a .25 caliber automatic that was loaded with shells. It could have taken the life of that woman, that man or anyone of you."

■■ The defendant's counsel objected to what could have been done and was sustained by the court. Later a written instruction was given to the jurors advising them that if counsel had made any statement not based upon the evidence it was to be disregarded. Arguments based on facts in evidence or on legitimate inferences deducible from the evidence do not transcend the grounds of proper comment. (*People v. Fort* (1970), 119 Ill.App.2d 350, 256 N.E.2d 63.) It is improper, however, for a prosecutor to direct his argument to individual members of the jury. (*People v. Forston* (1969), 110 Ill.App.2d 206, 249 N.E.2d 260.) Although a prosecutor's remarks may be subject to criticism, unless they constitute a material factor in the conviction or are such that prejudice to the defendant is their probable result, the verdict will not be disturbed. (*People v. Berry* (1960), 18 Ill.2d 453, 165 N.E.2d 257.) In *Berry* the prosecutor used language similar to that of the prosecutor in this case, saying, "Thank God, no one was killed in the process." The remark was held, under the circumstances, nonprejudicial. In the present case the evidence of the defendants' guilt was overwhelming. The prosecutor's statement that the defendants' loaded weapon could have killed either the complaining witnesses or the members of the jury could not have prejudiced the defendants.

Penalties imposed by a court should be proportionate to the seriousness of the offense. (Ill. Rev. Stat. 1965, ch. 38, par. 1—2(c).) In conducting a hearing after conviction for the purpose of determining the sentence to be imposed "the court shall * * * consider the evidence, if any, received upon the trial * * * and receive evidence, if any, as to the moral character, life, family, occupation and criminal record of the offender and may consider such evidence in aggravation or mitigation of the offense." (Ill. Rev. Stat. 1965, ch. 38, par. 1—7 (g).) The court held a hearing in aggravation and mitigation prior to sentencing. Neither Brown nor Hannah, both of whom were 22 years of age, informed the court as to their backgrounds. The State produced no evidence of their personal lives or prior criminal record.

■■■ Lack of a previous criminal record is one factor to be taken into account in considering reduction of sentences (*People v. Crews* (1969), 42 Ill.2d 60, 244 N.E.2d 593), as is also the lack of injury to the victims of the crime. Armed robbery is a serious crime and severe penalties for its commission are appropriate. But, under the facts of this case, the punishment of twenty to forty years for defendants who have no criminal record is incompatible with the spirit and purpose of the law and is an unjustifiable departure from the norm of sentences for similar offenses committed under similar circumstances. The sentence of each defendant will be reduced to ten to twenty years and, as modified, the judgment will be affirmed.

Affirmed as modified.

McNAMARA, P. J., and McGLOON, J., concur.