THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DARRELL THOMPSON, Defendant-Appellant.

(No. 54288;

First District—January 20, 1972.

Gerald W. Getty, Public Defender, of Chicago, for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Robert L. Best, Assistant State's Attorney, of counsel,) for the People.

Mr. JUSTICE DEMPSEY delivered the opinion of the court:

Darrell Thompson, a 17-year-old epileptic, was indicted for attempt to commit robbery, attempt to commit murder and aggravated battery. He waived a jury, was tried by the court, found guilty of all charges and sentenced to three concurrent terms of one to three years in the penitentiary.

He complains that the trial court committed error in failing to hold a hearing to determine his competency to stand trial; in failing to provide him with notice of, and the name of a witness to, an oral confession, and in sentencing him on all three offenses.

On the morning of January 24, 1968, Daisy Mitchell, the 85-year-old owner of a small grocery store, opened her store at 8:00 A.M. The defendant Thompson, whom she knew, came in and ordered two packages of cornflakes. She placed the boxes on the counter and as she bent over for a bag to put them in, Thompson struck her and knocked her down. She got up and reached into her apron for her gun. Thompson jumped over the counter, wrested the gun away, pointed it at her and demanded money. Mrs. Mitchell backed away and kept backing up until she reached the door to her living quarters. She then closed the door upon him and Thompson fired shots at her through the glass in the door. One bullet struck her in the neck, another in the foot. She ran next door and her neighbor called the police.

When the police arrived they took her to a hospital and interviewed her. They then went to Thompson's home and found him hiding on a closet shelf in an upstairs bedroom. He was pulled off the shelf and told he was under arrest for shooting Mrs. Mitchell. What he said to the policemen and the statements he gave them were suppressed.

Dennis Clair, a high school student, was in Thompson's home waiting to go to school with him when the police arrived. Thompson ran upstairs when he saw them coming. Clair opened the door and the officers asked him where Thompson was. He replied he didn't know. When they said they had heard him talking to someone, he told them Thompson ran out the back door. They said the door was covered by police and took him with them while they searched the house. Clair was present when Thompson was found on the closet shelf. Both boys were taken to the police station.

Clair testified for the prosecution. He said that Thompson told him and Thompson's 15-year-old brother Bruce, who left for school before the police came, that he tried to rob Mrs. Mitchell but she pulled a gun on him; he took it from her and shot at her while she was running inside the room at the back of the store.

Thompson denied trying to rob Mrs. Mitchell or shooting at her, or telling Clair that he had, and he denied hiding in a closet. He claimed Mrs. Mitchell mistook him for someone else, pointed a gun at him and told him not to move. He snatched the gun from her to prevent it from being discharged but it fired accidently as he seized it. She ran to the back of the store and slammed the door. He then threw the gun on the floor and it discharged again.

He intimated that Clair's story about his confessing the crime was fabricated because Clair was not his friend. He said they quarreled over a card game in December 1966 and since then Clair had been in his home only once.

Thompson's sister and brother testified in his behalf. The sister said she saw Clair and her brother fighting in December 1966 and heard him order Clair out of their house. She related a conversation with Mrs. Mitchell concerning a boy who had stolen cigarettes from her store. His brother also talked to Mrs. Mitchell about a boy for whom she was looking. He said that on the morning of the attempted robbery, his brother returned from the store and told him and Clair that he had almost lost his life because Mrs. Mitchell tried to shoot him; he did not say that he tried to rob her.

An evidence technician for the Chicago Police Department testified in rebuttal. He examined the grocery store and found two bullet holes in the door leading to the apartment in the rear. In his opinion these were fired directly at the door, the weapon having been held either at waist or shoulder height. One hole was through the glass of the door and the other below it through the wood paneling. The first was approximately four feet from the floor; the second about two and one-half feet from the floor. Both bullets passed straight through the door.

During the hearing on the motion to suppress the statements Thompson made to the police, the trial court was informed that he was afflicted with epilepsy. This was emphasized once more at the hearing in aggravation and mitigation. At this hearing it was also disclosed that in 1964 and 1965 he had been examined by a psychiatrist for the Chicago Board of Education. His mother testified that as a result of these examinations she was told that her son was under emotional strain. She also testified that he had outgrown his epileptic seizures and no longer required medication. The 1965 report was introduced in evidence. It stated that Thompson was of slower than average mental growth, was subject to perceptual distortions, overcame his lack of understanding by fantasy and could not see the difference between an accident and a mistake.

The combination of the defendant's epileptic condition and the psychiatrist's report are the basis for the contention that the trial court committed reversible error in not holding a hearing to determine the defendant's competency to be tried. No suggestion for such a hearing was made to the court prior to the trial, during the trial or in the post-trial motion; but it is argued that the facts brought to the court's attention created a *bona fide* doubt of the defendant's competency and the court, on its own motion, should have ordered a hearing pursuant to Ill. Rev. Stat., 1967, ch. 38, par. 104—2(a) (b).

■■ If facts are brought to the attention of the court which raise a bona fide doubt of a defendant's capacity to stand trial, the judge has a duty to hold a sanity hearing. (*People v. Thomas* (1969), 43 Ill.2d 328, 253 N.E.2d 431; *People v. Brown and Hannah* (1971), (Ill.App.3d), 270

N.E.2d 501.) It is, however, within the discretion of the court to decide whether the facts and circumstances raise a bona fide doubt. *People v. Pridgen* (1967), 37 Ill. 295, 226 N.E.2d 598.

■■ Evidence of epilepsy is not evidence of incompetency. In *People v. Martin* (1966), 69 Ill.App.2d 12, 216 N.E.2d 170, this court stated:

"Epilepsy is a symptom of a neurological disorder characterized by seizures, convulsions and temporary loss of consciousness. Except for these seizures and brief periods of unconsciousness, and for short periods afterwards, most epileptics are as responsible for their actions as anyone else. In 80 per cent or more cases impairment of cerebral function is but transitory. There are no psychological features or mental disorders that are peculiar to epileptics."

The *Martin* opinion was adopted by the Supreme Court in *People v. Harris* (1970), 47 Ill.2d 106, 265 N.E.2d 644. In *Harris* the court rejected the contention that the defendant's epilepsy, prior detentions in the psychiatric wards of penal institutions and prior competency examinations raised a bona fide doubt of his competency.

■■ The psychiatrist's report was almost four years old at the time of trial. The report itself stated, "It is not felt that the behavior described is an unusual departure from what one would expect of an epileptic, concomitant emotional difficulties in adjustment." In substance, the report simply said that Thompson was having the difficulties all epileptics have. Since prior adjudications of mental illness do not necessarily raise a bona fide doubt of an accused's current incompetency (*People v. Woods* (1963), 26 Ill.2d 557, 188 N.E.2d 1) a psychiatric report which fails to indicate incompetency certainly does not.

■■ The test whether an accused is capable of standing trial is his ability to understand the nature of the proceedings and cooperate with his counsel. (*People v. Brown* (1964), 31 Ill.2d 415, 201 N.E.2d 409.) An examination of the record shows that the defendant, who was ably defended, understood the charges against him and testified at length in his own behalf. His testimony showed him to be well-oriented and well-aware of the nature of the proceedings against him. *People v. Sims* (1966), 34 Ill.2d 206, 215 N.E.2d 201.

■■ In essence, the defendant requests this court to regress to the time when it was commonly thought that all epileptics were afflicted mentally. As was pointed out in *People v. Martin, supra,* this is incorrect both in law and in medicine. Neither the defendant's history of epilepsy nor the results of his psychiatric examinations, or the combination of them raised any doubt, let alone a genuine one, in law or in fact of the defendant's competency.

The defendant's motion for the State to produce the witnesses to any oral statements he may have made, was granted by the court before trial. Pursuant to the court's order the State served upon the defendant the names of four police officers. Dennis Clair's name was not listed, although it was among the names of prospective witnesses furnished by the State. The defendant argues that it was reversible error to permit Clair to testify to his oral confession without giving him Clair's name as a witness to the confession.

The pertinent portion of the Criminal Code (Ill. Rev. Stat. 1963, ch. 38, par. 114—10(a) ) provides:

"On motion of a defendant in any criminal case made prior to trial, the court shall order the State to furnish the defendant with a copy of any written confession made to any law enforcement officer of this State or any other state and a list of the witnesses to its making and acknowledgement. If the defendant has made an oral confession a list of the witnesses to its making shall be furnished."

The Committee Comments in connection with the 1963 statute state, "This section continues previous law." The statute in force prior to the 1963 enactment read:

"Whenever a written or oral confession shall have been made before any law enforcement officer or agency in this state by any person charged with any crime, a copy of such confession, if written, together with a list of the names and addresses of all persons present at the time such confession was made shall be furnished." Ill. Rev. Stat., 1961, ch. 38, par. 729.

This statute was held to apply only to confessions made to law enforcement officers. *People v. Clay* (1967), 38 Ill.2d 17, 230 N.E.2d 191; *People v. Martin* (1966), 35 Ill.2d 289, 220 N.E.2d 170.

██ In construing an amendatory act, the obect, as in the case of original acts, is to determine the intent of the legislature. Sutherland, *Statutory Construction*, 3rd Edition (1943), sec. 1929. The court will read an amendment as a whole and, if the intent of the legislature is not clear from the language of the act, will consider surrounding circumstances, including records of legislative proceedings and reports of legislative committees. From the comment of the drafting committee it appears to have been the intention of the legislature under the 1963 act that witnesses' names be furnished an accused only in connection with confessions made to law enforcement officers. There was no error in not informing the defendant that an oral confession would be presented and that Clair was the witness to the confession.

██ It is error to sentence a defendant for two or more offenses if

each offense arises out of the same conduct. (*People v. Duszkewcyz* (1963), 27 Ill.2d 257, 189 N.E.2d 299.) The Criminal Code defines conduct as "an act or a series of acts and the accompanying mental state." (Ill. Rev. Stat., 1967, ch. 38, par. 2—4.) Separate sentences may be imposed for distinct acts which are independently motivated or otherwise separable although they arise out of the same conduct. *People v. Stewart* (1970), 45 Ill.2d 310, 259 N.E.2d 24.

■■ Thompson's offenses of attempted robbery and attempted murder were distinct acts. Mrs. Mitchell frustrated his robbery attempt by escaping into her kitchen and shutting the door between this room and the store. His shooting at her as she ran through the kitchen and out of the back door was subsequent to the intended robbery and not part of that crime. The court correctly imposed separate sentences for these offenses.

The concurrent sentence for aggravated battery, however, poses a different problem. A person commits this offense if, in committing a battery, he intentionally or knowingly causes great bodily harm. (Ill. Rev. Stat. 1967, ch. 38, par. 12—4(a).) Thompson committed this offense when he shot Mrs. Mitchell. He did not commit the offense when he struck her as she reached for a paper bag. The latter offense was a battery, the intentional infliction of bodily harm. Chapter 38, paragraph 12—3(a). But Thompson was not indicted for battery. He was indicted, found guilty and sentenced for aggravated battery—an offense that arose out of the same act as the attempted murder. If offenses result from the same act, sentences cannot be imposed for both, either concurrently or consecutively. (*People v. Schlenger* (1958), 13 Ill.2d 63, 147 N.E.2d 316.) Aggravated battery, a lesser offense than attempt murder, was included in that crime. It was, therefore, error to sentence the defendant for aggravated battery.

The judgments finding the defendant guilty of attempt to commit robbery and attempt to commit murder are affirmed. The judgment and sentence for aggravated battery is reversed.

Affirmed in part and reversed in part.

McGLOON, P. J., and McNAMARA, J., concur.