The People of the State of Illinois, Plaintiff-Appellee, *v.* James Goodwin, Junior, Defendant-Appellant.

(No. 58853;

First District (3rd Division)—April 4, 1974.

James J. Doherty, Public Defender, of Chicago (Thomas Lipscomb, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Kenneth L. Gillis and Michael J. Polelle, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE DEMPSEY delivered the opinion of the court:

James Goodwin was charged with aggravated battery causing great bodily harm and with aggravated battery while using a deadly weapon. He waived a jury trial, was found guilty of both offenses and was sentenced to concurrent terms of 3 to 10 and 3 to 5 years in the penitentiary.

His contentions are that he was not proved guilty beyond a reasonable doubt because the testimony of the complaining witness lacked credibility, and that he was improperly sentenced because both crimes arose from the same conduct.

The complainant testified that as she was walking home from a friend's house at approximately 1 A.M., she saw a man standing in a playground across the street from her. The man, later identified as James Goodwin, ran toward her with a knife in his hand. He slashed at her and cut her on the neck. She begged him not to rob her and he replied, "I don't want your money, I want your body, want your life." She told him to leave her alone, but he dragged her into a nearby abandoned building and up the stairs to a second-floor apartment. On the way she dropped her purse, earrings and necklace. She wrestled with him and screamed for help through the broken windows of the room. As they struggled, she was cut on her neck, sides and fingers. She grabbed the knife and succeeded in breaking off part of the blade. She thought the struggle lasted for about 2 hours. Then a flashlight shone into the room and policemen entered. She said that they were lying on the floor and that Goodwin was upon her and about to cut her when the police entered. When he saw the police, he jumped to his feet.

The arresting officer testified that he and his partner entered the abandoned building after receiving a call to check on a disturbance. They found a purse, earrings and a necklace on the floor at the first landing. At the second-floor apartment they saw Goodwin leaning over the complainant with a knife in his hand. The policemen told him to turn around and put his hands against the wall, but he started toward them. He then stopped and the police disarmed him of his knife. He had blood on his shirt and hands. The victim, covered with blood and crying, ran from the room.

Goodwin testified that he was walking from his apartment to a barbecue place when he heard a woman screaming for help. He entered the building where the screams came from, went to the second-floor apartment and found the complainant lying on the floor. He asked her what was wrong and she told him that she had been cut. At that moment, the light from the policeman's flashlight shone into the room.

The defense contends that the complainant's testimony contained its own impeachment and was so improbable that it should have been disregarded by the court. It points out that she contradicted herself when she said that the defendant was both lying beside her and lying across her at the time the police entered the room, and when she said that no one ran from the room although she did so herself; she testified that the attack took 2 hours, but she said she was accosted about 1 o'clock and the police arrived shortly after that hour, and that it was highly improbable if not impossible for her to have carried on such strenuous activity with the defendant for 2 hours and sustain only five stab wounds.

The inconsistencies in the complainant's testimony were minor and

explainable. She was struggling with the defendant when the police arrived and whether he was lying beside her or upon her was not a material contradiction and neither was her answer to the question about whether anyone ran out of the room, which she could have interpreted as referring to what happened prior to the time the police came. She was a very frightened woman during the time that she and the defendant were fighting with each other and she could easily have felt that the attack lasted longer than it did. The complainant and the defendant were approximately the same size and weight so her ability to fight him off was neither impossible nor improbable. Her doing so was a tribute not only to her strength but to her determination and courage.

■■ The testimony of a witness may contain its own impeachment and may be so improbable as to be disregarded. (*People v. Poltrock* (1974), 18 Ill.App.3d 847, N.E.2d; *People v. Barfield* (1969), 113 Ill.App. 2d 390, 251 N.E.2d 923.) Minor inconsistencies, however, do not warrant disbelieving the entire testimony. The trial judge accepted the testimony of the complaining witness and we find no reason to disagree with his appraisal of her credibility.

A defendant can be sentenced for more than one offense only when the offenses result from separable conduct. Conduct is defined as "an act or series of acts and the accompanying mental state." Ill. Rev. Stat. 1971, ch. 38, par. 2—4.

The defense contends that the acts constituting the infliction of great bodily harm were not separable from the acts constituting the use of a deadly weapon; that the actions of the defendant throughout the offense were directed to causing great bodily harm. The State argues that the offense of aggravated battery while using a deadly weapon was committed and completed when the defendant accosted the victim on the street and superficially cut her with the knife, and that the offense of aggravated battery with the intent to cause great bodily harm was committed when the defendant pulled her into the abandoned building and inflicted the more serious knife wounds upon her.

In support of its argument, the State cites the case of *People v. Thompson* (1972), 3 Ill.App.3d 684, 278 N.E.2d 1, where consecutive acts of the defendant were held to be separate offenses. In *Thompson,* the defendant attempted to rob a store. The proprietress of the store frustrated the robbery by escaping into another room. The defendant shot at her as she ran out the back door of the store. This court held that the shooting of the proprietress was subsequent to the intended robbery and was not part of that crime.

■■ The testimony of the complainant does not support the State's theory. She testified that when the defendant first approached her he

said he wanted her body and her life. He immediately began cutting her with his knife. The attack was continuous and its character did not change at any time. It did not end on the street, but it continued as the defendant pulled the protesting victim to the second floor of the abandoned building and it continued in the vacant apartment. The fact that he dragged the victim during the attack and would have completed the offense in a different place if the police had not intervened did not make his conduct separable.

The judgment of conviction will be affirmed, but the sentence for the lesser offense of aggravated battery while using a deadly weapon will be vacated.

Affirmed as modified.

McNAMARA, P. J., and McGLOON, J., concur.