THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* PERNELL WILLIAMS, Defendant-Appellant.

Second District    No. 79-478

Opinion filed August 22, 1980.

Mary Robinson and Kyle Wesendorf, both of State Appellate Defender's Office, of Elgin, for appellant.

Daniel D. Doyle, State's Attorney, of Rockford (Phyllis J. Perko, Martin N. Ashley, and Raymond Buckley, Jr., all of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE WOODWARD delivered the opinion of the court:

Defendant, Pernell Williams, was charged with robbery on July 31, 1978. On defendant's motion, two psychiatrists were ordered to examine defendant to determine his fitness to stand trial. A fitness hearing was held on March 16, 1978, after which the defendant was found fit to stand trial. On April 24, 1979, following a jury trial, defendant was found guilty of robbery. On appeal, defendant's sole contention is that the trial court erred in finding him fit to stand trial.

At the time of the proceeding below, fitness for trial or sentencing was governed by section 5—2—1 of the Unified Code of Corrections (Ill. Rev. Stat. 1977, ch. 38, par. 1005—2—1), which provides in part:

"(a) For the purposes of this Section a defendant is unfit to stand trial or be sentenced if, because of a mental or physical condition, he is unable:

(1) to understand the nature and purpose of the proceedings against him; or

(2) to assist in his defense."

If a bona fide doubt of defendant's fitness is raised, the court is to order a fitness hearing. (Ill. Rev. Stat. 1977, ch. 38, par. 1005—2—1(b).) In this case, after defendant raised the issue of fitness, the trial court did order such a hearing.

At defendant's fitness hearing, testimony was given by the two psychiatrists appointed by the court to examine defendant. Both had interviewed and examined defendant on previous occasions relating to defendant's fitness to stand trial for other offenses. On January 25, 1979, both examined defendant in relation to his fitness for trial on this robbery charge. Dr. Hamaan, called on behalf of the State, testified that he had found defendant unfit to stand trial in 1976, and had again found him unfit to stand trial in January of 1978, but fit in September of 1978. Dr. Hamaan testified that during his examination of defendant on January 25, 1979, defendant claimed to be acutely depressed, had told him of a suicide attempt and had indicated that if sent to prison he would probably attempt to kill himself. He stated that defendant claimed difficulty in

remembering things (including dates on which he had failed to appear in court). At hearing examinations, defendant had described certain hallucinatory episodes, but at the January 25 examination defendant was no longer experiencing hallucinations; he was, however, bothered by a "buzzing" in his head. Based on defendant's stated objective of becoming a bus driver, Dr. Hamaan's opinion was that defendant exhibited "poor judgment." Dr. Hamaan's diagnosis was that defendant suffered from a "long standing, chronic, schizoid reaction," which was exhibited by defendant's tendency toward fantasy and daydreaming. He concluded that defendant was capable of understanding the nature and purpose of the court proceedings, at least superficially. However, Dr. Hamaan did "question" whether, because of the memory defect, defendant could be of adequate assistance in his defense. In addition, Dr. Hamaan indicated that defendant's fitness could vary from month to month; he stated that medication should be used to treat defendant's condition, as it had been in the past.

Dr. Graybill, called as a witness for the defense, had seen defendant on five prior occasions; in September of 1978, he had found defendant fit to stand trial, but had indicated that defendant would be "in and out" of psychosis. With regard to the January 25, 1979, examination of defendant, Dr. Graybill testified that defendant apparently no longer experienced hallucinations but that defendant was hearing a buzzing in his head. He indicated that defendant's memory of past events was impaired, but that his recent memory (two months) was "pretty good." He indicated that he felt defendant lacked judgment and was unrealistic in his desire to become a bus driver. He observed that at the examination defendant was aware of where he was and was responsive. Dr. Graybill indicated that defendant had a general idea of who court personnel were and that he knew the name of his attorney, although not that of the judge. Dr. Graybill's testimony is conflicting, however, as to defendant's answer when asked if he could understand court procedure. At one point in the testimony, Dr. Graybill purports to quote the defendant as saying, "I understand all of that stuff they are talking about in court"; at a later point in the testimony, Dr. Graybill stated that the answer was "I don't understand all of that stuff they are talking about in court." He testified that defendant's ability to assist his attorney would "vary." Dr. Graybill concluded that defendant was unfit to stand trial because he was "in and out of psychosis"; he felt that defendant should be treated with medication.

The court concluded from the testimony and a psychiatric report submitted to the court that the doctors' opinions were "guarded" and "imprecise" and "in the nature of a psychiatric guess" as to defendant's fitness to stand trial, i.e., to understand the nature of the proceedings

against him and to cooperate with his counsel. Thus, having viewed defendant, and using "common sense," the court determined that defendant was "in one of those areas where" he was fit to stand trial; the court did acknowledge that it was possible defendant could slip back to an "area" of unfitness, but that on that date, March 16, 1979, defendant was fit to stand trial.

■■ Once the issue of a defendant's competency has been raised, due process requires that the State prove the fitness of the defendant to stand trial by a preponderance of the evidence. (*People v. Thompson* (1978), 60 Ill. App. 3d 198, 376 N.E.2d 442; *People v. Hancock* (1978), 59 Ill. App. 3d 596, 375 N.E.2d 909.) In this case, as defendant points out, the only witnesses who testified at the fitness hearing concluded that defendant was unfit to stand trial. However, the State contends that the witnesses' opinions were not binding on the trial court and that the court's finding of fitness is supported by the judge's personal observations of defendant's behavior.

The State cites *People v. Skorusa* (1973), 55 Ill. 2d 577, 304 N.E.2d 630, and *People v. Fontaine* (1975), 28 Ill. App. 3d 450, 328 N.E.2d 685, for the proposition that a court is entitled to take into consideration its personal observations of a defendant in determining his fitness to stand trial. However, those two cases dealt with situations in which the trial court was considering whether or not a bona fide doubt of defendant's fitness had been raised so that a fitness hearing should be held pursuant to section 5—2—1(b) of the Unified Code of Corrections (Ill. Rev. Stat. 1977, ch. 38, par. 1005—2—1(b)). Such a determination is ordinarily within the discretion of the trial court (*People v. Skorusa*), and expert opinion may or may not be available to aid the court in deciding if such a bona fide doubt exists. In this case, once defendant raised the issue of fitness, the court did order a fitness hearing at which expert witnesses testified. Even if the court could consider its own observations of defendant in addition to the expert testimony, *Skorusa* and *Fontaine* do not hold that the trial court's observations alone can support a finding of fitness contrary to expert opinion; in both cases the court's observation of the defendant was only one factor in reaching its determination that the defendant was fit to stand trial.

■■ In order for the court below to have determined that this defendant was fit to stand trial, the court must have rejected the conclusions of the expert witnesses. The State suggests that rejection of these conclusions was proper in that the factual bases for the opinions did not conclusively establish that defendant was unfit as defined in section 5—2—1 of the Unified Code of Corrections (Ill. Rev. Stat. 1977, ch. 38, par. 1005—2—1).

The record indicates that neither psychiatric opinion clearly indicated that defendant could not understand the nature and purpose of

the proceedings against him; one witness stated that the defendant indeed could understand them, at least superficially. The opinions that defendant was unfit appear to have been based primarily on the defendant's memory defects and psychotic symptoms as they related to his ability to assist in his defense. In *People v. Bilyew* (1978), 73 Ill. 2d 294, 383 N.E.2d 212, the supreme court pointed out that the credibility and weight to be given psychiatric testimony is for the trier of fact; the trial judge is to analyze and evaluate the factual bases for experts' opinions rather than to rely on the ultimate opinions themselves. Indeed, it is clear that the trial judge is not obliged as a matter of law to accept opinions of psychiatrists. (*People v. Deizman* (1976), 44 Ill. App. 3d 829, 358 N.E.2d 1208.) Further, the conclusions of experts are only as valid as the bases or reasons for them. (*People v. Walker* (1979), 77 Ill. App. 3d 227, 395 N.E.2d 1087.) However, although courts have properly rejected psychiatric testimony as to a defendant's unfitness, and have found a defendant fit to stand trial, such determinations of fitness were made after a court has heard conflicting testimony; we have found no cases in which a trial court has been permitted to reject conclusions of experts who agreed that a defendant was unfit to stand trial.

It is clear from the record and testimony in this case that defendant did have mental deficiencies and that he had previously been found unfit to stand trial. Both expert witnesses testified that defendant's condition rendered him so incompetent as to be unable to assist in his defense. We are aware that prior adjudications of unfitness do not necessarily raise even a doubt as to a defendant's current condition (*People v. Thompson* (1972), 3 Ill. App. 3d 684, 278 N.E.2d 1), and that a person may be found fit to stand trial although on other subjects his mind may be unsound. (*People v. Lang* (1979), 76 Ill. 2d 311, 391 N.E.2d 350.) However, in this case, the only testimony at the fitness hearing did indicate that this defendant at the time of the hearing was not fit to stand trial; such a conclusion should not be rejected by a trial court without other testimony or evidence that defendant was in fact fit. Defendant did not testify at the hearing or at trial. The trial judge's personal observation of defendant regarding his fitness for trial in this case consisted of brief exchanges of casual conversation; the record does not disclose any other behavior of defendant which might have indicated that defendant was either fit or unfit. We find that the trial court's rejection of the expert witnesses' conclusions was not warranted solely on the basis of the court's opinion as derived from such brief exposure to the defendant or from the court's "common sense" interpretation of the witnesses' psychiatric opinions.

For the foregoing reasons, we hold that the trial court's finding of fitness was against the manifest weight of the evidence and that therefore the order finding defendant fit to stand trial must be vacated. The

judgment below is reversed and the cause is remanded for a new fitness hearing and such further proceedings as authorized by law.

Reversed and remanded.

UNVERZAGT and VAN DEUSEN, JJ., concur.