(No. 34017.—

John Costas, Appellant, *vs.* The People of the State of Illinois, Appellee.

*Opinion filed November 26, 1956.*

GEORGE J. COTSIRILOS, and JOHN J. COGAN, both of Chicago, for appellant.

LATHAM CASTLE, Attorney General, of Springfield, and JOHN GUTKNECHT, State's Attorney, of Chicago, (FRED G. LEACH, EDWIN A. STRUGALA, GORDON B. NASH, CHARLES D. SNEWIND, and WILLIAM SYLVESTER WHITE, of counsel,) for appellee.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

In July of 1954 John Costas pleaded guilty to an indictment for murder and was sentenced to imprisonment in the penitentiary for a term of 50 years. In September of 1955 he filed a "petition in the nature of a writ of error coram nobis," by which he sought to have the judgment of conviction vacated. His petition was dismissed upon motion and he appeals.

Technically, the question is the legal sufficiency of the petition. But at the hearing on the motion to dismiss, the petitioner made an offer of proof. He also filed two affidavits in support of his petition, together with the transcipt of the proceedings at the time he was sentenced. The trial court considered these matters as part of the petition without objection, and we shall so treat them here.

Petitioner was 66 years old in 1954. The deceased was a young married woman. She was petitioner's godchild and he felt toward her "just like his own child." She was a narcotics addict and petitioner tried to help her. When she suggested that she wanted to see a doctor, he took her to a psychiatrist and arranged for her hospitalization. After she was released she began taking narcotics again. In January of 1954 she cut her wrist with a razor blade. Petitioner borrowed money and with her husband again arranged for medical attention and hospitalization. When she was released from the hospital she again resumed the

use of drugs. On April 14 she came to the defendant's room and started crying. She said that she wished she was dead because "they are going to put me away for a couple of years." Two days later she returned in the same distraught condition. Defendant tried to get her to eat some food but she refused and said, "I ought to have you kill me. Don't send me home. I can't stop the thing." When she fell asleep he cut her throat.

The petitioner alleged that certain facts regarding the state of mind of the petitioner were not presented to the court when the judgment was entered; "That the state of mind of the defendant was caused by a despondency tantamount to compulsion or duress and prevented him from exercising any effort whatsoever for his defense to the charge of murder;" that petitioner was represented first by the Public Defender and then by an attorney assigned by the Chicago Bar Association; that "he continually requested of said attorneys that he be given the death penalty and manifested other signs of complete despondency and desperation which actions and conduct were entirely inconsistent with a proper defense of his case;" that when he entered his plea of guilty he "was unaware of the sentence, or even an approximate sentence, that he was to receive and paid no attention to the admonitions of the court." The petition also alleged that after he was sentenced he attempted to commit suicide in the county jail, and that it was not until three months after he was transferred to the penitentiary "that he overcame his despondency and suicidal urge and realized that by his conduct he had not allowed himself the full protection of the law."

Petitioner was represented first by John M. Branion of of the Public Defender's office. Later, Robert F. Monaghan of the Chicago Bar Association's committee on defense of prisoners was substituted. The affidavits of these attorneys were offered in support of the petition. Branion's affidavit stated that he attempted to explain the consequences of the

charge to the petitioner, and advised him he would try to get the State's Attorney to recommend the acceptance of a plea of guilty to manslaughter. Both attorneys stated that throughout their discussions with the petitioner he insisted that they request that he be sentenced to the electric chair. Branion's affidavit also stated that "the defendant demonstrated an inability to cooperate with affiant so that a proper defense could be made."

Petitioner's contentions are (1) that he had a valid defense of insanity to the charge of murder, and (2) that at the time he entered his plea of guilty "he was not in a mental condition to voluntarily enter such a plea." The claim of insanity at the time of the crime was not expressly stated in the petition. It is here based upon the bizarre circumstances of the crime, and upon an offer to prove by the testimony of Dr. Haines, a State psychiatrist, that when petitioner entered the plea of guilty "he was still suffering from some mental illness at the time and had been for some time previously."

Upon this foundation petitioner builds an argument based on the test of mental responsibility for crimes which was used in *Durham* v. *United States,* 214 F.2d 862. But petitioner's argument cannot succeed on this record, for there is no suggestion of any causal connection between petitioner's act and the "mental illness" referred to by Dr. Haines. And as pointed out in the *Durham* opinion, even under the test there used, "He would still be responsible for his unlawful act if there was no causal connection between such mental abnormality and the act." 214 F.2d 875.

The claim that petitioner's mental condition was such that he could not enter a plea of guilty is based on his insistence that his attorneys obtain the death penalty for him, on Branion's affidavit that petitioner demonstrated a lack of ability to cooperate with counsel, and on petitioner's attempt to commit suicide.

The attempt to commit suicide after petitioner's conviction could not, of course, have been known to the trial court when judgment was entered. It cannot, therefore, serve as an independent ground for this proceeding. Whether testimony concerning the occurrence would be admissible on any theory need not now be determined.

Both of the attorneys appointed to represent the petitioner have sworn that during their interviews with him he insisted that they should attempt to secure the death penalty for him. One of them, a lawyer of long experience in the trial of criminal cases, has sworn that in his opinion the petitioner was unable to cooperate in his own defense. The record does not show that these facts were known to the trial judge when he permitted petitioner to withdraw his plea of not guilty and enter a plea of guilty. When petitioner was sentenced the trial court knew that there had been a psychiatric examination of petitioner by Dr. Haines; petitioner's offer of proof states that Dr. Haines would testify that although petitioner's mental condition was such that he could cooperate with counsel, "he was still suffering from some mental illness, mental sickness at the time and had been for some time previously." And the record does not show that Dr. Haines was aware of the petitioner's insistence upon the death penalty.

The allegations of the petition and the supporting affidavits strongly suggest the conclusion that petitioner was not mentally competent at the time his plea of guilty was entered. The offer of proof of the psychiatrist's testimony, although ambiguous, does not dispel the serious doubt which otherwise exists. So far as the record discloses, when the plea of guilty was accepted the trial judge was not apprised of the petitioner's mental condition as described in the petition, in the attorneys' affidavits and in the offer of proof. Petitioner's allegations now stand uncontested. If they are true, and the conditions they indicate had been known to the trial judge, we assume that he would have refused to

accept the plea of guilty until petitioner's competence had been determined in the manner provided by statute. Ill. Rev. Stat. 1955, chap. 38, pars. 592, 593; see *Schroers* v. *People*, 399 Ill. 428; *People* v. *Samman,* 408 Ill. 549; *People ex rel. Wiseman* v. *Nierstheimer,* 401 Ill. 260.

We are of the opinion that the ends of justice require that a hearing be had on the petition and that if the allegations of the petition be proved the judgment of July 12, 1954, be set aside and a new trial ordered. Accordingly, the order of the criminal court of Cook County dismissing the petition is reversed and the cause remanded, with direction to overrule the motion to dismiss and to proceed in accordance with this opinion.

*Reversed and remanded, with directions.*