**People of the State of Illinois, Defendant in Error,
v. Cleotha Carter, Plaintiff in Error.**

**Gen. No. 51,196.**

First District, Fourth Division.

May 26, 1967.

Arwin M. Zoller and Stephen Levy, of Chicago, for plaintiff in error.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane, Richard Rinella and Carmen V. Speranza, Assistant State's Attorneys, of counsel), for defendant in error.

MR. PRESIDING JUSTICE ENGLISH delivered the opinion of the court.

OFFENSE CHARGED
Rape.[1]

DEFENSE AT TRIAL
The act committed was neither forcible nor against the will of the prosecutrix.

JUDGMENT
After a bench trial, the court found defendant guilty and imposed a sentence of twelve years.

POINTS RAISED ON APPEAL [2]
(1) The evidence was insufficient, since there was no corroboration of the material elements of force and lack of consent.
(2) The requisite mental capacity and intent were not established.

---

[1] Ill Rev Stats 1959, c 38, § 490.
[2] The appeal was filed in the Supreme Court and transferred here.

EVIDENCE

## Testimony of State Witnesses

*Prosecutrix, Mrs. Bernetta Mann*

At about noon on July 30, 1961, she was in the bedroom of her apartment with Charles Smith when she heard a loud bang on the front door. She jumped from bed, put on a skirt and ran into the front room where she saw defendant with a broken beer bottle in his hand. He said he was looking for Melvin Harris, whom he intended to kill. Mrs. Mann picked up the telephone to call her mother, but put it down on defendant's order and threat that he would stab her with the beer bottle which he held close to her face. She ran into the bedroom just in time to see Smith going out the window, while shouting to her to hold the bedroom door, as he was going for help.

Defendant broke the door from its hinges and entered the bedroom. After setting the broken bottle down beside the bed and striking Mrs. Mann on the arm and breast, he ordered her to lie down, which she did. He then pulled up her skirt, removed her pajama bottoms, got on top of her, and had intercourse. Near the end of the half-hour period defendant was in the bedroom, someone knocked on the door. Defendant covered her mouth with his hand and told her he would kill her if she screamed. After another knock he said he would choke her if she "hollered."

Mrs. Mann's brother, Wilbert Gregory, entered the room through the window while defendant was on top of her. Gregory pulled defendant off her, grabbing him around the neck and putting a knife to his throat. Defendant asked what was wrong. Smith and defendant's brother, Clifford Carter, were outside the window. Clifford told Gregory to call the police. Gregory and Smith left the apartment and returned in about five minutes with a policeman. Mrs. Mann signed a complaint and was taken to Provident Hospital for examination. She then

went to the police station where she repeated her story in the presence of defendant who just sat there crying. She had known defendant for six years, but had never had intercourse with him before.

*Charles Smith*

He had spent the night with Mrs. Mann and in the late morning heard a knock at the door of the apartment and heard someone calling for "Melvin." Looking through a crack in the bedroom door, he saw defendant with a broken bottle in his hand. He told Mrs. Mann to hold the door; then he jumped out the window to get her brother. He returned after twenty minutes with her brother, Gregory, and defendant's brother. They hoisted Smith up to the bedroom window and when he looked in he saw defendant on top of Mrs. Mann having intercourse with her and covering her mouth with his hand. He was let back down to the ground and he and defendant's brother helped Gregory up and into the bedroom. They went around to the front and were let into the apartment by Gregory. Smith noticed that the bedroom door was broken.

*Wilbert Gregory and Clifford Carter*

They corroborated the testimony set forth above, commencing with Smith's return to the scene of the crime. Gregory added that when he pulled defendant off his sister she was crying.

*Donald Benoit, the arresting police officer*

He took defendant to the police station where defendant said nothing when subsequently confronted by Mrs. Mann. The bedroom door frame at the apartment was cracked on both sides and there was a hole in the upper left panel.

In rebuttal, Officer Benoit testified that Mrs. Mann's upper left arm was slightly discolored.

The State introduced into evidence, without objection, a broken beer bottle taken from Mrs. Mann's apartment. For the purpose of impeaching the credibility of de-

138

fendant as a witness (his testimony is set forth below), the State also introduced evidence of a prior conviction and sentence for statutory rape.

### Testimony of Defense Witnesses
*Defendant, Cleotha Carter*

He entered Mrs. Mann's apartment on July 30 looking for Melvin. He had intercourse with Mrs. Mann but did not rape her. He did not have a broken beer bottle and did not break down the bedroom door; he just "leaned" on it and the plywood fell out. When asked by Mrs. Mann at the police station why he had done such a thing, he replied that he did not know.

Prior to the commencement of this trial, the defense informed the court of defendant's previous commitment, on July 28, 1953, to the Dixon State Hospital, a mental institution, and petitioned for a sanity hearing.[3] A jury was impaneled and testimony heard, at the conclusion of which a verdict was returned finding defendant to be sane.

OPINION

(1) Both parties have discussed People v. Faulisi, 25 Ill2d 457, 185 NE2d 211; People v. Jeanor, 23 Ill2d 347, 178 NE2d 384; People v. Fryman, 4 Ill2d 224, 122 NE2d 573; and People v. Qualls, 21 Ill2d 252, 171 NE2d 612, in arguing defendant's first position: that the evidence was insufficient to establish the necessary elements of force and lack of consent. We have reviewed those authorities and in applying them find that the proof here was sufficient to sustain conviction.

None of the factual situations in those cases is as strong as the evidence in the instant case. The trial court believed Mrs. Mann's testimony (substantially corroborated by the other witnesses) that defendant had

---

[3] No details as to reasons for commitment or release were then brought to the attention of the court and none have been presented on this appeal.

broken into the bedroom carrying a broken beer bottle, had threatened her, and attempted to stifle any outcry she might have made. Her body also bore marks of violence. That he had intercourse with her is not contested.

██ In People v. Harrison, 25 Ill2d 407, 185 NE2d 244, the court answered a defense contention that the evidence failed to show that the prosecutrix made "such resistance as demonstrated the act was against her will," by stating at page 413:

> . . . it is necessary only to refer to the fact that the defendant had held a knife to the neck of the prosecutrix at the outset, and as he left had "flashed the knife" and threatened to kill her if she told anyone. (See also People v. Brown, 29 Ill2d 375, 378, 194 NE2d 326.)

The defendant's use of the broken beer bottle brings the instant case within the Harrison ruling. The fact that Mrs. Mann made no outcry does not compel a reversal of the finding below. The law does not require outcry where it would be a useless gesture or where the victim is restrained by fear of violence. People v. Williams, 23 Ill2d 295, 299, 178 NE2d 372; People v. Elder, 25 Ill2d 612, 186 NE2d 27.

(2) Defendant also argues that the State failed to prove intent on the part of defendant; that defendant could not have had such an intent because of insanity; that there being evidence of such insanity, the State had the burden of proving defendant sane; and that the State failed to meet this burden. The evidence on which defendant relies as tending to show insanity consists of two fragments of testimony of the victim's brother. He testified that "When once he [defendant's brother] got his hands on him [defendant], he could take care of him"; and the same witness gave an affirmative response to a question by the State's Attorney as to whether "there [is] something wrong with him [defendant]."

140

■■■ While it may be conceded, on the authority of People v. Lowhone, 292 Ill 32, 126 NE 620, that opinion testimony of experts is not necessary on the issue of insanity, and while we are aware that there is no burden upon a defendant to prove insanity (People v. Krauser, 315 Ill 485, 146 NE 593), but only to introduce evidence tending to establish such an affirmative defense (People v. Patlak, 363 Ill 40, 44–45, 1 NE2d 228), nevertheless, we do not believe that the ambiguous and insubstantial evidence referred to here is sufficient to meet even this minimal requirement. People v. Haupris, 396 Ill 208, 210–211, 71 NE2d 68; People v. Bray, 52 Ill App2d 384, 389, 202 NE2d 152. It leaves intact the basic presumption that all men are sane and responsible for their actions. People v. Geary, 297 Ill 608, 131 NE 97. The instant case is easily distinguishable on the facts from the cases cited by defendant. People v. Nierstheimer, 401 Ill 260, 81 NE2d 900; Durham v. United States, 214 F2d 862 (DC Cir, 1954); Costas v. People, 9 Ill2d 534, 138 NE2d 468.

■■ In any event, no question of defendant's mental capacity at the time of the commission of the crime was raised at the trial and it is clearly the law that the defense of insanity at the time the crime was committed is an affirmative one and unless raised is waived. People v. Milligan, 28 Ill2d 203, 205, 190 NE2d 753; People v. Bray, 52 Ill App2d 384, 388, 202 NE2d 152; People v. Jones, 75 Ill App2d 332, 341, 221 NE2d 29.[4]

---

[4] The distinction between insanity at the time of the trial (which, after the jury's verdict, is no longer in issue here) and at the time of the crime, was discussed and the reasons for the waiver rule were explained in Glenn v. People, 9 Ill2d 335, 341–342, 137 NE2d 336:

Under the statute (Ill Rev Stats 1955, chap 38, par 592,) when a preliminary hearing is ordered to determine a defendant's sanity, the inquiry is confined to a determination of his sanity at the time of the trial for the purpose of determining whether he is capable of understanding the nature and object of the proceeding against him, of comprehending his own condition in reference to

The judgment of the trial court is affirmed.

Affirmed.

DRUCKER and McCORMICK, JJ., concur.

---

such proceeding, and of conducting his defense in a rational, reasonable manner. (Cf. People v. Geary, 298 Ill 236.) His mental condition at the time of the commission of the crime is foreign to the inquiry and becomes pertinent only when the accused is placed on trial for the alleged crime. (People v. Lewis, 2 Ill2d 328; People v. Gavrilovich, 265 Ill 11.) The defense of insanity at the time of the commission of the crime may be urged on the hearing of the cause, notwithstanding a finding of a jury that defendant was sane at the time the jury was empaneled. (People v. Shaffer, 400 Ill 332; People v. Reck, 392 Ill 311.) The defense of insanity at the time of the commission of the crime is an affirmative defense which it is incumbent on the defendant to raise during the trial. People v. Wagner, 390 Ill 384.) His failure to do so waives that defense. (Brown v. People, 8 Ill2d 540.) This is especially true where a defendant has submitted the issue of his sanity to a jury and a jury has found him sane at the time of the hearing. In People v. Shaffer, 400 Ill 332, at page 335, this court stated: "The difficulty with the position of defendant on this point is that he had already submitted to a jury the question of his sanity, and the jury had found the defendant sane at the time of the hearing. To all intents and purposes at the time of the trial, the defendant was sane and was not precluded from raising the question of his sanity at the time of the commission of the crime as a defense to the charge."