(No. 41831.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* ANTHONY THOMAS, Appellant.

*Opinion filed November 26, 1969.*

WARD, J., took no part.

GERALD W. GETTY, Public Defender, of Chicago, (NORMAN W. FISHMAN, JAMES D. HENNINGS and JAMES J. DOHERTY, Assistant Public Defenders, of counsel,) for appellant.

WILLIAM J. SCOTT, Attorney General, of Springfield, and EDWARD V. HANRAHAN, State's Attorney, of Chicago, (JAMES B. ZAGEL, Assistant Attorney General, and ELMER C. KISSANE and MICHAEL D. STEVENSON, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

Anthony Thomas, James Felder and his wife Anita Felder were indicted upon a charge of armed robbery by the grand jury of Cook County. Uncontradicted testimony of witnesses for the prosecution established that James Felder was disarmed and arrested on the spot during the course of an armed robbery of a grocery store. Anthony Thomas was arrested shortly thereafter in his apartment, located not far from the grocery store. He was identified as the other participant in the robbery. After Thomas had been arrested and taken back to the store, the police officers returned a second time to his apartment. At that time Anita Felder was searched, and a roll of bills corresponding in amount to the money taken from the store was found in her brassiere. These bills were introduced in evidence.

At the conclusion of the prosecution's case a verdict of not guilty was directed for Anita Felder. The jury returned verdicts of guilty as to Anthony Thomas and James Felder. Upon appeal the appellate court reversed the conviction of James Felder on the ground that a hearing should have been held to determine his competence to stand trial, but affirmed the conviction of Anthony Thomas. (101 Ill. App. 2d 333.) We granted Thomas's petition for leave to appeal.

In this court Anthony Thomas, hereinafter defendant,

contends: first, that the trial court should have conducted a hearing to determine his competence to stand trial, and, second, that the roll of bills taken from the person of Anita Felder was the product of an illegal search, and was improperly admitted in evidence against him.

At the arraignment Anthony Thomas stated that his attorney was "El-elohe, the Lord God of Israel." James Felder stated that his name was Simeon Israel and he also said that his attorney was the "Lord God of Israel." The public defender was appointed to represent the three defendants. He moved to have the two men examined by the Behavior Clinic of the criminal court of Cook County. Separate reports filed by the examining psychiatrist diagnosed each man a sociopathic personality and concluded that each knew the nature of the charge and was capable of co-operating with his counsel.

So far as the defendant is concerned, the first portion of the report of the psychiatric examination related information received from a social agency that had known him as Anthony Thomas in 1960. That information was that he was born in 1943, that he had made a rather poor school adjustment, and eventually dropped out of high school for financial reasons after completing 2½ years. Psychological testing in 1960 had indicated low average intelligence. The report of the examining psychiatrist continued: "He was examined in a conference booth in the Cook County jail. He walked majestically to the booth wearing a turban. After seating himself, he stared at me, but did not smile. The blink reflex was decreased. He gave his name as 'Abendigo Ben Israel' which means the son of Jacob. When asked his age, he replied 'What age as far as being on this earth or what when long ago it was that God laid the foundation for the earth—how long ago was it that God commanded man from the dust to the earth—how old is the truth—how old is the tree—God is everywhere.' When asked his religious preference, he replied 'I face the East—my father

is Abraham—Isaac—God is universal—we live—do you question me about being here—why are you here—why do you question me.' The purpose of the interview was explained and he replied 'In other words to see if I am positive or negative.' He is in this building because he is accused of a robbery charge. He goes to court on the 10th before Judge Friedlund. His lawyer is 'My Lord God of Israel—the All Holy one—Most High.' He denies having been in a mental institution. When asked to sign an authorization so that would [sic] could obtain his past medical history, he asked, 'what name we wanted' and I told him his own name. He signed 'Anthony Thomas.' When told to leave, he arose and again majestically walked toward the bull pen with stately measured steps. *Diagnosis:* Sociopathic Personality Disturbance. He knows the nature of the charge and is able to cooperate with his counsel."

Before the trial commenced, the assistant public defender who represented them stated that he was unable to communicate with the defendants because of their religious hallucinations. His motion asking that a competency hearing be held was denied. At the conclusion of the prosecution's case, the defense offered testimony to show that Felder was insane at the time of the crime. Felder's wife testified that her husband had recently undergone a religious transformation which had resulted in a preoccupation with laudatory chanting and singing. Felder himself testified as to the revelations made to him by his God and indicated that his actions were directed by the God with whom he communicated directly. The trial judge called counsel to the bench and stated that a hearing would be held to determine both Felder's sanity and his competence to stand trial. A jury was subsequently impaneled, apparently to determine Felder's competence to stand trial, but that jury was then dismissed without hearing any testimony.

The appellate court concluded that the court should have proceeded with the competency hearing, since "it is clear

that during the course of the testimony of James Felder and Anita Felder, doubt arose in the mind of the court as to the ability of James Felder to stand trial." 101 Ill. App. 2d 339.

The Code of Criminal Procedure provides that a hearing to determine a defendant's competence should be held if either before or during trial "the court has reason to believe that the defendant is incompetent." (Ill. Rev. Stat. 1965, ch. 38, par. 104—2(a)(b).) The duty of the trial judge to hold such a hearing arises when, either from the court's own observations or upon the suggestion of counsel, a *bona fide* doubt is raised as to defendant's mental capacity. See, *People* v. *Chatman,* 36 Ill.2d 305; *People* v. *Heidman,* 38 Ill.2d 466.

Defendant's counsel faced a formidable dilemma. His relationship with Thomas was not a voluntary one and the impetus that prompts co-operation with retained counsel was lacking. The consequence of a lack of co-operation, as this case illustrates, is to deny counsel access to defendant's knowledge of the factual basis of the charges against him, or to information that might refute those charges. On the other hand, the quality of counsel's representation is open to scrutiny in subsequent proceedings. To require counsel to attempt a defense without the defendant's co-operation thus imposes a substantial burden. Such a requirement should be imposed only when the defendant's unresponsiveness is not the result of a lack of mental capacity. Before a court allows a defendant to choose not to participate in his defense, the record must show that the choice was knowingly made by one who had the ability to co-operate and was able to understand the consequences of failing to do so.

There is no suggestion in the record that counsel's repeated references to the defendant's unwillingness to co-operate were not made in good faith. Those references are consistent with the pattern of defendant's behavior as exhibited at his arraignment, which took place before a judge other than the judge who tried the case. (See, *Costas* v.

*People,* 9 Ill.2d 534.) This case stands in contrast to *People* v. *Harper,* 31 Ill.2d 51, where counsel never mentioned at trial the possibility of his client's incompetence, and *People* v. *Foley,* 28 Ill.2d 426, where counsel did no more than suggest his "belief"—contradicted by defendant's trial performance—that his client was incompetent. In this case the implications of the defendant's incapacity raised by counsel are not refuted by any other evidence bearing on the defendant's mental condition. The initial Behavior Clinic report should not be viewed as conclusive in the presence of the continuing manifestations of abnormal behavior. (See, *Pate* v. *Robinson,* 383 U.S. 375, 385, 15 L. Ed. 2d 815, 822, 86 S. Ct. 836.) We conclude that the trial court should have undertaken a more detailed investigation of defendant's capacity in order to substantiate that his choice not to co-operate was knowingly made.

The defendant's original trial began in May, 1966. The hearing which should have been held would have determined his competence as of that date. Sufficient time has elapsed since then to make it doubtful that the evidence bearing upon his competence could be reconstructed if we were to remand for a hearing as to competence only. Consequently, we must reverse the judgment of conviction and remand the cause for a new trial in order that the defendant may have an opportunity to raise the question of his present competence. (See, *Pate* v. *Robinson,* 383 U.S. 375, 15 L. Ed. 2d 815, 86 S. Ct. 836, *People* v. *McLain,* 37 Ill.2d 173; *People* v. *Thompson,* 36 Ill.2d 332.) This resolution makes it unnecessary to consider the defendant's contention concerning his motion to suppress certain evidence.

The judgment of the appellate court is reversed and the cause is remanded to the circuit court of Cook County for a new trial.

*Reversed and remanded.*

Mr. JUSTICE WARD took no part in the consideration or decision of this case.