THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* JAMES GIANNOPOULOS *et al.*, Defendants-Appellees.

(Nos. 57659-57664 cons.; )

First District (1st Division)—June 3, 1974.

Bernard Carey, State's Attorney, of Chicago (Kenneth L. Gillis and Jerald A. Kessler, Assistant State's Attorneys, of counsel), for the People.

No brief for appellees.

Mr. JUSTICE HALLETT delivered the opinion of the court:

Defendants were charged with various gambling offenses as a result of evidence obtained against them by police executing a search warrant. The defendants' motion to quash the warrant and to suppress evidence obtained from the search was granted and the State has appealed. For reasons subsequently set forth, we reverse and remand.

■■ The defendants have not seen fit to appear as appellees or to file briefs. Where, as here, an appellee has not filed a brief in the reviewing court, it may reverse without considering the case in detail but reversal is not required and the reviewing court may if it chooses consider and determine the case on its merits. (2 I.L.P. *Appeal and Error*, ch. 10, § 560; *Perez v. Janota* (1969), 107 Ill.App.2d 90, 246 N.E.2d 42; *Daley v. Jack's Tivoli Liquor Lounge, Inc.* (1969), 118 Ill.App.2d 264-275, 254 N.E.2d 814; *Lynch v. Wolverine Insurance Co.* (1970), 126 Ill.App.2d 192, 193, 261 N.E.2d 466.) We elect to follow the latter course here.

The facts giving rise to this dispute were as follows. Investigator Dineen applied for a search warrant by filing the following complaint.

"On January 25, 1971 I, Investigator John M. Dineen, a police officer assigned to the Intelligence Division of the Chicago Police Department interviewed an informant as to his knowledge of illegal gambling activities in the Chicago area. I have known this informant for over three years during which time he has given me information on gambling activities on at least six occasions resulting in six local gambling raids with at least nine arrests and four convictions. On all raids conducted with information provided by this informant illegal gambling paraphernalia was seized.

This informant stated to me that he has been placing wagers with two persons known to the informant as Schnaps and Pete on horse races and various sporting events. The informant stated that these two men would call him at his place of employment and accept the wagers and that they would meet on Fridays at various places on the north side and sit in the auto of the two men and pay off or collect from the informant. The informant identified the auto of Schnaps as a 1969 white Chevrolet bearing 1970 Illinois license LT 5723 and the auto of Pete as a 1969 black over white Chevrolet bearing Illinois 1970 license HN 7225. These two autos were known to the affiant as belonging to James Giannopoulos aka Schnaps and Peter Grafner. Photos of these two men were obtained and shown to the informant and he identified these as being the men known to the informant as Schnaps and Pete.

On January 28, 1971 at about 11:50 AM I was with the informant at his place of business when he received a telephone call. The informant held the telephone so that I could hear both parties to the conversation and addressed the man who called as 'Schnaps'. Schnaps stated to the informant, 'You're up forty-eight from yesterday, what do you want today'. The informant stated 'Give me the number one horse in the fifth at Hialeah and the number five in the seventh and ninth at the Fair Grounds, five across the board on each and a ten dollar Round Robin'. Schnaps then said, 'OK, you're on, we'll meet you this evening at about six at Lincoln and Bryn Mawr to settle up, I'll be in my car, not Petes.'

At about 5:50 PM on January 28, ! ( & ! I observed the informant standing on the corner of Lincoln and Bryn Mawr with the auto of James Giannopoulos, the aforementioned 1969 white Chevrolet, pulled up and two men were observed in the auto. The driver being James Giannopoulos and the passenger Peter Grafner. The

informant entered the auto and remained in same for about four minutes. The informant then got out of the car and it drove off. The informant was then interviewed and he stated that Pete and Schnaps referred to sheets of paper they kept under the front seat of the auto before squaring off the weeks wagers with him.

On February 3, 1971 I again was in the place of employment of the informant when he received a telephone call and held the telephone so that I could hear both parties to the conversation and I listened as the informant stated 'Pete, what is my figure' and the man on the other end answered 'You're down sixty-eight'. The informant then stated 'OK call me back tomorrow and I'll even up with you'. The voice on the other end then stated 'OK, I'll see you Friday'.

On February 3, 1971 at about 10:55 PM I observed James Giannopoulos driving his 1969 white Chevrolet at Western Ave. and Catalpa St. and observed that it was bearing Illinois 1971 license SC 1098.

A check with the Chicago Police Department Inquiry Section shows James Giannopoulos aka James Harris has an IR#20797 which lists several prior gambling arrests and that Pete Grafner has an IR#227662 which lists several prior gambling arrests with one conviction for violation of the federal gambling statutes and a federal penitentiary sentence for same.

In view of the aforementioned facts I believe that James Giannopoulos aka James Gardner, James Harris or Schnaps and Peter Grafner aka Peter Gray are operating an illegal gambling operation and that records of wagers will be found on these men or in the 1969 white Chevrolet bearing Illinois 1969 license SC 1098."

A search warrant was issued. Its execution resulted in defendants' arrests, however, their subsequent motion to quash the warrant and suppress evidence obtained as a result of the search was granted by the court. Defendants' memorandum in support of the motion contended that the search warrant was issued on the basis of information obtained from illegal eavesdropping thereby depriving them of their rights under the fourth amendment of the U.S. Constitution and their rights under article 1, section 6 of the Illinois Constitution. The State has appealed the order of the court. Defendants have not participated in the appeal.

The State first contends that there was no illegal eavesdropping because there was no eavesdropping as that term is defined by statute (Ill. Rev. Stat. 1971, ch. 38, par. 14—2) since no eavesdropping device was used (see Ill. Rev. Stat. 1971, ch. 38, par. 14—1). The State maintains that therefore the evidence which they obtained from their search

warrant procured as the result of information overheard on the telephone was admissible (see Ill. Rev. Stat. 1971, ch. 38, par. 14—5). In any case the State maintains that no violation of defendants' rights under either the State or Federal constitutions occurred.

■■■ We agree with the State's first contention that no violation of the eavesdropping statute occurred when Investigator Dineen overheard the conversation between informant and defendant Giannapoulos as the result of the informant holding out the telephone receiver so that Dineen could listen. Section 14—2(a) of the Criminal Code (Ill. Rev. Stat. 1971, ch. 38, par. 14—2(a)) provides that a person commits the offense of eavesdropping when he "[u]ses an *eavesdropping device* to hear or record all or any part of any conversation unless he does so with the consent of any other party to the conversation and at the request of a State's Attorney." (Emphasis ours.) Whether the unaided human ear listening to a telephone on which the conversation is being conducted constitutes use of an eavesdropping device which is defined by statute as "any device capable of being used to hear or record oral conversation whether such conversation is conducted in person by telephone, or by any other means" (Ill. Rev. Stat. 1971, ch. 38, par. 14—1(a)) is a question which has been definitively settled by this court: It does not (*People v. Brown* (1970), 131 Ill.App.2d 244, 248-249, 266 N.E.2d 131; *People v. 5948 West Diversey Ave.* (1968), 95 Ill.App.2d 479, 483, 238 N.E.2d 229). Therefore, we conclude that no eavesdropping as defined by statute occurred in this case.

■■ The State next contends that no right under the fourth amendment of the U.S. Constitution was violated. We agree. The United States Supreme Court held in *United States v. White* (1971), 401 U.S. 745, 28 L.Ed.2d 453, 91 S.Ct. 1122, that where an informant is a party to a conversation with a defendant the informer may transmit the contents of that conversation to a third party police officer since no invasion of privacy occurs where one party to a conversation consents to divulge the contents of the conversation to police officers. The same is true of a tape recording made of the conversation by an informer and later given to police (*Lopez v. United States* (1963), 373 U.S. 427, 10 L.Ed.2d 462, 83 S.Ct. 1381), or of notes later given to police by the informer (*United States v. Hoffa* (1966), 385 U.S. 293, 17 L.Ed.2d 374, 87 S.Ct. 408). In effect a defendant takes his chances that the person to whom he reveals information which might subject him to criminal liability is not a police officer or informant (*United States v. Hoffa, supra*). In the instant case the contents of the conversation leading to the issuance of a search warrant were clearly revealed through the consent of the informer who was

a party to the conversation. Therefore, no fourth amendment right was violated.

It remains to be seen, however, whether defendants' rights under article 1, section 6 of the Illinois Constitution were violated. The State contends that no violation of article 1, section 6 occurred. Defendants argued below in their memorandum in support of their motion that there was a violation. We have concluded that there was no violation of defendants' rights. Article 1, section 6 provides:

"The people shall have the right to be secure in their persons, houses, papers and other possessions against unreasonable searches, seizures, invasions of privacy or interceptions of communications by eavesdropping devices or other means. No warrant shall issue without probable cause, supported by affidavit particularly describing the place to be searched and the persons or things to be seized."

A proper analysis of whether there has been a violation of article 1, section 6 involves the following analysis: was there an interception of the conversation between defendant and the person to whom he speaks, and if so, then was it accomplished by use of an eavesdropping device or was it accomplished by other means. Finally, assuming that there was an interception by use of an eavesdropping device or other means then we must determine whether that interception was reasonable or unreasonable. If unreasonable, it would constitute a violation of article 1, section 6.

The initial consideration is whether an interception of the conversation between the informer and defendant occurred when the informer held out the telephone receiver so that Officer Dineen could overhear the conversation. Since interception is nowhere defined we must examine the intent of the framers as exhibited in their constitutional debates to help clear up the ambiguity. (*People v. Nahas* (1973), 9 Ill.App.3d 570, 577, 292 N.E.2d 466.) During the question and answer session following the presentation of the proposed article 1, section 6 provision subsequently adopted by the Convention, the following colloquy occurred between Delegate Kamin, the questioner, and Delegate Foster who authored the provision:

"MR. KAMIN: The concept of an inter—the concept of an interception somehow seems to imply something that comes between the two ends of something, and I'm curious what happens when somebody is at the end. If somebody is at the receiving end, it seems to me it is not an interception.

MR. FOSTER: I would agree with that. If you take the mail

out of your mailbox and hand it to me, I haven't intercepted. If I take it out of your mailbox, steam it, read it, and put it back in, I have intercepted. If you invite me into a room where there is a speaker-phone, for example; and we all sit around and listen to a conversation that the other guy at the other end doesn't know we are listening to, that's not interception. If I am sitting in the basement of your house without you knowing I'm there with some kind of a induction device listening to that conversation, it is an interception.

Interception, I think, implies, first of all, that it involves a third party to the communication before the communication has been completed, and also I think interception implies lack of consent.

MR. KAMIN: But it does not apply—it does not apply, then, to one of the parties to the communication?

MR. FOSTER: A party cannot intercept a communication."
(Sixth Illinois Constitutional Convention, Verbatim Transcript of June 4, 1970, vol. III, page 1530.)

■■ We hold that under the facts of this case there was no interception for two reasons. First, there was consent by a party to the conversation, and second, the officer overheard the conversation by listening with his unaided human ear to a telephone on which the conversation was conducted. Since there was no interception, we find no need to address ourselves further to an analysis of article 1, section 6. Defendants' rights were not violated.

We therefore reverse the judgment and remand the case with directions to deny the defendants' motion to quash the search warrant and suppress the evidence obtained from the search.

Reversed and remanded with directions.

GOLDBERG and BURKE, JJ., concur.