THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* FRED CLARDY, Defendant-Appellant.

(No. 12684; )

Fourth District—April 10, 1975.

Michael J. Costello, of Springfield, for appellant.

No appearance for the People.

Mr. PRESIDING JUSTICE SIMKINS delivered the opinion of the court:

Defendant appeals from a conviction for aggravated battery in violation of section 12—4(a) of the Criminal Code (Ill. Rev. Stat. 1973, ch. 38, par. 12—4(a)) and a conviction for intimidation in violation of section 12—6(a)(1) of the Criminal Code (Ill. Rev. Stat. 1973, ch. 38, par. 12—6(a)(1)). He was convicted by a jury in Morgan County in a single trial on the two charges. He received concurrent sentences of 3⅓ to 10 years on each count.

The People did not file a brief nor make an appearance within the times specified in Supreme Court Rule 343 (Ill. Rev. Stat. 1973, ch. 110A, par. 343). Four months after their brief was due and after the cause had been set for oral argument, the People filed a motion for leave to

file a brief. This motion was denied as no good cause for the delay in making an appearance was shown.

■■ In this situation, we may reverse pro forma or consider the cause on its merits. (*People v. Giannopoulos*, 20 Ill.App.3d 338, 314 N.E.2d 237.) We choose to follow the latter course.

The offense occurred on October 6, 1973. The criminal complaints were read to the defendant in open court on October 10. The record shows that the defendant refused to face the court or respond to the court's questions. Similarly, the defendant, during the preliminary hearing on October 26, refused to respond, remained standing during the hearing, and had to be handcuffed because he would not behave. For these and other reasons, a trial by jury on the question of competency was had on December 4 and 5, 1973. By that time, the defendant had been examined twice by a psychiatrist, Dr. Philip Bornstein. The psychiatrist testified at the competency trial that defendant would not cooperate with him and, in fact, would not talk at all. Therefore, he was unable to make a diagnosis. Dr. Bornstein testified that he was unable to tell whether the defendant was psychotic or a malingerer. The only testimony the State presented was that of a fellow inmate at the county jail that defendant was able to play cards and seemed normal. The jury found the defendant competent.

Trial was set for March 20, 1974. Several days before the trial date, defendant's counsel filed a motion for a continuance of 3 days. In support of the motion, counsel stated that defendant had indicated he would cooperate with the psychiatrist and the earliest examination that could be arranged was March 21, 1974. The continuance was denied.

A jury trial on the intimidation and aggravated battery charges was held on March 20, 1974. The first witness was Geraldine Peters, a neighbor of the defendant and his mother. Mrs. Peters testified that she heard screaming early in the morning of October 6, 1973, went out to her driveway and saw Freddie beating on his mother. She went back into the house to call the police, but the defendant came in her house to stop her. He beat on his chest and said "I am king." He also said that he was going to kill his mother and would have to kill Mrs. Peters too. However, he left quickly and did not touch or harm her. Mrs. Peters said the defendant appeared very angry and excited. She also testified that she thought him to be sane, although he was mean, and he had changed since the death of his father several years ago.

A police officer testified next. He stated he arrived at the Clardy residence and found the defendant and his mother in the driveway. Defendant appeared to be in an excited or aggravated state. His mother was

bleeding badly around the face. In response to the officer's questions, she admitted her son had beaten her. The defendant was then placed in custody. A photograph of Mrs. Clardy was taken the next day at the hospital, and this photo was admitted into evidence.

A stipulation was entered into by the State in defense that defendant had applied for health insurance a year ago and had been rejected on the grounds of a nervous disorder.

Mrs. Clardy, the aggravated battery victim, testified for the defense. She admitted her son struck her, but said he did not know what he was doing. She testified that her son had been in three different psychiatric institutions over the past several years. On objection by the State, she was not permitted to testify that her son, in her opinion, was insane.

The defendant's sister testified that defendant had deteriorated since the death of their father several years ago. She also testified to outbursts of the defendant at the jail. She stated that these outbursts would make her so nervous that she quickly left. She was not allowed to testify whether she believed her brother was in need of mental treatment, because of objections to the questions by the State.

The jury returned a verdict of guilty on the charges of intimidation of Mrs. Peters and aggravated battery of Mrs. Clardy. Post-trial motions were filed. The motion for a new trial was supported by a letter from Dr. Bornstein, which stated that, in his opinion, defendant was a catatonic schizophrenic, although a diagnosis of severe retarded depression could not be ruled out. The motion for a new trial was denied. On April 17, 1974, defendant was sentenced to 3⅓ to 10 years on each count, the sentences to be served concurrently. The court stated that the minimum term was higher than the statutory minimum for the offenses, because the defendant presented a continuing risk of physical harm. It should also be noted that the record shows defendant's counsel had informed the court prior to trial that defendant at no time cooperated in his defense and, in fact, would not talk to counsel.

We hold here that it was error for the trial court not to grant a new trial. Defendant's counsel asked for a new trial in his post-trial motion on the ground that defendant had not been able to cooperate with his attorney. It is a denial of due process to make a defendant go to trial at a time when he is incompetent. *Pate v. Robinson*, 383 U.S. 375, 15 L.Ed.2d 815, 86 S.Ct. 836.

In support of the motion for a new trial, a letter was attached from the psychiatrist, Dr. Bornstein, who had examined the defendant on the day after the trial. The letter states in part:

"On examination on March 21, 1974 he was accompanied by two

officers from the Morgan County Jail. At that time I was told that he had been found guilty of aggravated battery and one other charge in court on March 20, 1974.

The essence of my examination is confined to a report of his mental status examination, as no other significant historical data is yet available.

Mr. Clardy presented himself as a very dirty muscular white man who sat quietly in a chair. He had a torn T shirt; he was unshaven, unkempt, and had long unwashed, uncombed hair. He moved with slow, stiff movements, and sat staring straight ahead. His speech was characterized by marked increase in latency of response and then when his speech did come out, it came out extremely slowly and usually in monosyllables. He volunteered very little; was oriented to March 23, 1974; would not answer the question when asked his name. He responded in the affirmative when being asked whether he remembered being in this office. He admitted to hearing derogatory voices. He muttered something about being homosexual, but would not expand upon it. He exhibited waxy flexibility (a characteristic of catatonic schizophrenia.) He could form small calculations without difficulty. He could recite the past five presidents without difficulty, but quite slowly. He on one occasion said a cow had eight legs. When asked about this later said that he had four. He said his thoughts were extremely slow. My diagnostic impression at this time is that he is suffering from catatonic schizophrenia, although I cannot rule out the possibility that he is experiencing a very severe retarded depression.

It is my impression at this time, that he is unable to cooperate with his attorney as a result of the mental processes noted above. I recommend that he receive inpatient psychiatric hospitalization until such time as his condition is adequately treated, at which time he should be reevaluated with regards to his fitness to stand trial or to be sentenced.

In the same context, it appears clear to me that he is not really capable of understanding the nature of a sentence or the possible consequences of having been found guilty (inasmuch as he has been tried) and thus at this time he is unfit to be sentenced."

■■ The issue of defendant's competency had been before the court since the beginning of the case. All the factors which may raise a *bona fide* doubt were present in this case. The court was aware of the defendant's extensive history of institutionalization for mental disturbances. The occurrence itself contains bizarre aspects, such as defendant's beat-

-ing on his chest and saying "I am king." Defendant's conduct in court was also abnormal since the defendant refused to participate in any fashion. He also refused to talk to his counsel. To require counsel to attempt a defense without defendant's cooperation is a substantial burden which cannot be imposed if it is the result of lack of mental capacity. *People v. Thomas*, 43 Ill.2d 328, 253 N.E.2d 431.

> "Before a court allows a defendant to choose not to participate in his defense, the record must show that the choice was knowingly made by one who had the ability to co-operate and was able to understand the consequences of failing to do so." *People v. Thomas*, 43 Ill.2d 328 at 332, 253 N.E.2d at 433.

Although a competency trial had been held several months before, we note that the testimony was extremely sparse. No expert opinion was given at that trial that defendant was competent. Certainly, the evidence at that hearing was far from overwhelmingly proving defendant's competency.

■■ When all of these factors were combined with the psychiatric report, and were known to the trial judge at the time of the hearing on the motion for new trial, there was ample evidence to show that a bona fide doubt existed as to whether defendant had been fit to go to trial on March 20, 1974. Under these circumstances, a new trial should have been ordered with reconsideration of defendant's competency. The right to be tried only when one can understand the charges and assist in his own defense is obviously fundamental to any system of justice.

■■ In view of the disposition of this issue, we find it unnecessary to consider other allegations of error. However, we do note that during the trial on the merits, the court refused to permit lay witnesses to give opinion testimony on the issue of the sanity of the defendant. Insanity was the only defense offered by the defendant. Lay witnesses may express an opinion on the ultimate issue of sanity, provided that their opinion is based on personal observation. (*People v. Ehrler*, 114 Ill.App. 2d 171, 252 N.E.2d 227.) The testimony would have been particularly important in this situation, since no expert opinion was available.

The judgment of the trial court entered on the jury's verdicts finding defendant guilty of aggravated battery and intimidation is reversed and the cause remanded for further proceedings consistent with this opinion.

Reversed and remanded.

TRAPP and CRAVEN, JJ., concur.