THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* EDDIE GORDON BENNETT, Defendant-Appellant.

Fifth District   No. 82—353

Opinion filed November 17, 1983.

Randy E. Blue and Patricia McMeen, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Phillip McQuillan, State's Attorney, of Carlyle (Stephen E. Norris and Frank J. Bieszczat, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE WELCH delivered the opinion of the court:

On the evening of November 22, 1981, Centralia police officers Jerry Edmonson and Richard Simer followed a car driven by the defendant and occupied by Pamela Atchison from the Motel Centralia

to the Plaza Lounge in Centralia. In the lounge's parking lot, they confronted the defendant in his car. He had in his possession a .22-caliber pistol and a plastic bag containing packages of brown powder and white powder. He was arrested and was subsequently charged with the unlawful possession of heroin and cocaine and with the unlawful use of weapons. Following a jury trial in the circuit court of Clinton County, he was convicted of all three offenses. He received sentences of three years' imprisonment for the controlled substances offenses and 364 day's imprisonment for the weapons offense.

In the present appeal, the defendant raises a single issue. The information which prompted the surveillance of his room by the Centralia police was a tip from a switchboard operator at the Motel Centralia that she had overheard a telephone conversation pertaining to a drug transaction. The defendant argues that all evidence resulting from the conversation heard by the operator should have been suppressed because the conversation was overheard in violation of the Illinois eavesdropping statute. Ill. Rev. Stat. 1981, ch. 38, par. 14—1 *et seq.*

Ellen Rosencranz, a desk clerk and switchboard operator at the Motel Centralia, testified both at the hearing on the defendant's suppression motion and at trial. The switchboard that she operates, described by her as old, is located in the office of the motel. The telephones in the motel rooms do not have dials, and if someone in a room wishes to make a call, he must contact the switchboard operator. The operator will hear a buzz from the switchboard and a light will flash to indicate which room desires telephone service. The operator then inserts the right cord of a pair of cords into a jack for that room, pushes down a switch known as the "key," and picks up the receiver. Mrs. Rosencranz usually answers, "office."

The operator next obtains the desired number from the caller in the room, plugs the left cord of the pair into a jack for one of the five outgoing lines and dials the number. For a local call, the operator waits to hear that someone has answered, because the motel does not bill patrons for local calls unless they are completed. The operator then returns the receiver to its cradle and pushes the key up so as not to hear the conversation. If the receiver is on the cradle and the key is in the down position, the operator can still hear the conversation if the office is reasonably quiet, because the cradle for the receiver is only a foot and one-half from the head of someone seated at the switchboard.

To bill the patron for the call, the operator must fill out a ticket with information about the call. If she did not have other calls waiting

to be connected, Mrs. Rosencranz would normally fill out a ticket immediately. Otherwise, she would make a note of the call and fill out the ticket later.

On November 22, 1981, Mrs. Rosencranz was working at the switchboard when she heard a buzz from the room registered to the defendant. She connected the cord to that room and heard a woman request her to dial the Plaza Lounge, a local call. Mrs. Rosencranz dialed that number and waited for someone to answer. She heard a voice at the other end reply, "The Plaza," and then she returned the receiver to its cradle. However, contrary to her usual practice, she did not push the key up, but instead started to fill out a ticket.

The office was quiet that Sunday night, and Mrs. Rosencranz heard the woman in the motel room identify herself as Pam. She then heard her say "that they had some coke that they wanted to exchange for grass." Mrs. Rosencranz pushed the key into the up position to shut off the conversation, and, a minute or so later, she called Officer Ray Simer of the Centralia police department. She told him about the conversation she had overheard and furnished him with the identity of the defendant, the number of his room, and a description of his car.

It was the information provided by Mrs. Rosencranz that led to the observation of the defendant's motel room by Officers Edmonson and Richard Simer. At the suppression hearing, the State stipulated that but for this information, there would not have been cause to stop the defendant. Conversely, defense counsel stipulated that if the court would find the information about the conversation admissible, then the authorities had cause to stop the defendant. The record supports the mutual stipulations.

The defendant's argument that the testimony of Mrs. Rosencranz should have been suppressed is not based on constitutional grounds but on the Illinois eavesdropping statute. The statute provides, generally, that evidence obtained in violation of its provisions is not admissible in any civil or criminal trial. (Ill. Rev. Stat. 1981, ch. 38, par. 14—5.) The only exception to this rule arises in a prosecution under the eavesdropping statute itself. Since that is not the case here, the issue presented is whether Mrs. Rosencranz violated the eavesdropping statute by overhearing the conversation originating from the defendant's room and reporting it to the police. The State's position is that she did not, first, because the switchboard was not an "eavesdropping device," and, second, because she did not overhear the conversation surreptitiously, but did so inadvertently. We need consider only the first of the State's arguments.

The statute defines eavesdropping as the use of an eavesdropping device to hear or record a conversation without the appropriate consent of one or more parties, or the use of information which a person knows or should know has been obtained through the use of an eavesdropping device. (Ill. Rev. Stat. 1981, ch. 38, par. 14—2.) The use of such a device is therefore a prerequisite to criminal liability or exclusion of evidence under the statute. An eavesdropping device is defined as a "device capable of being used to hear or record oral conversation whether such conversation is conducted in person, by telephone, or by any other means." (Ill. Rev. Stat. 1981, ch. 38, par. 14—1(a).) Devices used for the restoration of the hearing or hearing-impaired individuals are exempted from that definition.

■■ ■ In accordance with this definition, our supreme court held in *People v. Gaines* (1981), 88 Ill. 2d 342, 430 N.E.2d 1046, *cert. denied* (1982), 456 U.S. 1001, 73 L. Ed. 2d 1295, 102 S. Ct. 2285, following a long line of authority (*People v. Petrus* (1981), 98 Ill. App. 3d 514, 424 N.E.2d 755; *People v. Giannopoulos* (1974), 20 Ill. App. 3d 338, 314 N.E.2d 237; *People v. Brown* (1970), 131 Ill. App. 2d 244, 266 N.E.2d 131; *People v. 5948 West Diversey Avenue* (1968), 95 Ill. App. 2d 479, 238 N.E.2d 229; *People v. Dixon* (1961), 22 Ill. 2d 513, 177 N.E.2d 224 *cert. denied* (1962), 368 U.S. 1003, 7 L. Ed. 2d 542, 82 S. Ct. 637), that a person who overheard a conversation by listening with an unaided ear to an extension telephone did not use an "eavesdropping device." By way of contrast, in *People v. Gervasi* (1982), 89 Ill. 2d 522, 434 N.E.2d 1112, an extension telephone with the speaking element removed from the mouthpiece was said to fit the definition of an eavesdropping device. The court explained.

"The function of a telephone is to transmit and receive sound. A telephone which is altered so that it can no longer perform one of these functions, namely the transmission of sound, is not a telephone but only a listening device. The removal of the transmitter or speaking element from the mouthpiece of each of the telephones made them eavesdropping devices within the meaning of our statute." *People v. Gervasi* (1982), 89 Ill. 2d 522, 527, 434 N.E.2d 1112, 1114; see also *People v. Perez* (1968), 92 Ill. App. 2d 366, 235 N.E.2d 335.

■■ ■ The distinction drawn in *Gervasi* between telecommunications equipment which can transit and receive messages, thereby not being an eavesdropping device, and equipment which can only receive messages, thereby being an eavesdropping device, comports with section 14—1 of the eavesdropping statute. That section refers to eavesdropping devices as those devices which can "hear or record" conver-

sations. Criminal statutes must be strictly limited to subjects obviously within their literal terms (*People v. Lutz* (1978), 73 Ill. 2d 204, 383 N.E.2d 171; *Bismarck Hotel Co. v. Petriko* (1961), 21 Ill. 2d 481, 173 N.E.2d 509), and to expand the prohibitions of the eavesdropping statute to devices which receive and transmit messages would violate that rule of construction.

■ The application of this reasoning to the facts of this case follows naturally. Because, at the time Mrs. Rosencranz overheard the pertinent conversation, the switchboard at the Motel Centralia was capable of transmitting, and indeed did transmit messages both to and from the motel's office, it was more like the extension telephone in *Gaines* than the extension telephone in *Gervasi*. In other words, it was not an eavesdropping device.

■ The defendant directs our attention to an exception listed in section 14—3(b) of the act. (Ill. Rev. Stat. 1981, ch. 38, par. 14—3(b).) This provision exempts the following activity from the proscriptions of the act.

> "Hearing conversation when heard by employees of any common carrier by wire incidental to the normal course of their employment in the operation, maintenance or repair of the equipment of such common carrier by wire so long as no information obtained thereby is used or divulged by the hearer."

It could be argued that by construing the eavesdropping statute as not covering devices which transmit and receive messages, this exception would be rendered a nullity. We cannot agree. If an employee of a common carrier by wire uses an eavesdropping device, namely, a device with hearing or recording capacity only, he or she will be protected from liability under the act if the information obtained through use of that device is not divulged. Section 14—3(b) of the act is thus still meaningful even under our interpretation of the definition of an eavesdropping device.

In conclusion, we hold that a prerequisite for criminal liability or exclusion of evidence under the eavesdropping statute is that a device which can hear or record conversations, but not transmit them, must have been used. Mrs. Rosencranz' switchboard does not fit this definition and therefore the information given by her to the Centralia police was not obtained in violation of that statute. Accordingly, the judgment of the circuit court of Clinton County is affirmed.

Affirmed.

HARRISON, P.J., and JONES, J., concur.